Albert B. THUR, Plaintiff in Error,

v.

Joseph DUNKLEY, Defendant in Error.

No. 42343.

Supreme Court of Oklahoma.

Sept. 8, 1970.

D. C. Thomas, Oklahoma City, for plaintiff in error.

H. A. Bud Carter, Oklahoma City, for defendant in error.

DAVISON, Justice.

The parties to this appeal will be referred to herein by their trial court designation. The plaintiff, Joseph Dunkley, instituted this action against the defendants, Albert B. Thur, Douglas Reed Sharp, Galen J. May and Cubie Elroy Loveless, for property damage resulting from an accident to his tractor-trailer, allegedly caused by the negligence of the defendants.

The case was tried to a jury and resulted in a judgment in favor of plaintiff and against only the defendants Thur and Sharp in the amount of $4,698.59.

This appeal has been perfected by the defendant Thur on the theory that the trial court erred in overruling his demurrer at the conclusion of plaintiff's evidence and overruling his motion for judgment notwithstanding the verdict and motion for new trial. The defendant Sharp has not appealed.

The plaintiff based his cause of action against the defendant Thur on the theory of the alleged acts of negligence of the defendant in stopping his car on the highway without warning or signal and failure to put flares or other warning devices in violation of State law. 47 O.S.1961, § 11–1001.

It is the position of the defendant that he parked his vehicle to change a sudden blow out flat tire on a part of the highway during the daylight hours with ample unobstructed vision for vehicles coming from either direction.

Certain undisputed evidentiary facts gives a résumé of physical surroundings and circumstances leading up to the accident. The accident occurred on a blacktop highway, U.S. 277, in the early part of the afternoon, approximately 6 miles south and 8.6 miles west of Chickasha. That at the scene of the accident the highway was 22 feet wide with approximately 6 feet of rough shoulder on each side of the highway. The defendant Thur stopped his vehicle, a Chevrolet, hereafter referred to as Car A, headed east, to fix a sudden flat blown out tire approximately at the scene of the accident. His car was partly on the shoulder but approximately four feet of the vehicle remained on the highway, leaving a clearance of 18 feet or 7 feet between the left side of Car A and the center of the highway. Just previously to the time of the accident it had been raining and the highway was wet. The highway sloped toward the east from the crest of a hill. From the rear end of the stopped Thur car, back west to the crest of the hill, was a distance of 650 feet. The highway patrolman, who reached the scene of the accident soon after it occurred, testified that the rain had stopped, that the day "was cloudy but visibility was fine." A highway sign just west of the crest advised travelers that the road was slippery when wet.

At the point of the accident drivers of vehicles traveling in an easterly direction could see the Thur vehicle (Car A) for approximately 650 feet and the driver of vehicles traveling in a westerly direction could see the stopped Thur car for approximately 2000 feet.

Other undisputed evidentiary facts disclosed that a GMC pickup, driven by Cubie Elroy Loveless, hereafter referred to as Vehicle B, while also traveling east saw Car A and stopped his vehicle 60 feet from the rear of Car A. A third vehicle, a Chevrolet Corvette, driven by Galen J. May,

hereafter referred to as Car C, traveling east stopped his car approximately 60 feet behind the rear of Vehicle B. Soon thereafter a Chevrolet sedan, driven by defendant Douglas Reed Sharp, hereafter referred to as Car D, traveling east, came over the crest of the hill with unobstructed vision of approximately 590 feet. After seeing the vehicles A, B and C stopped, he became baffled for a second, then applied his brakes but was unable to stop before striking Car C, knocking it into Car B. By the force of the impact Car C, after striking Car B, careened into the opposite lane of travel, forcing the semi-truck trailer driven by plaintiff, traveling up the hill in a westerly direction, off the highway, the tractor part of plaintiff's truck skidding into a ditch causing the damage sued for. There was no contact between the Thur car and any other car and no contact between the plaintiff's tractor-trailer and any other car.

Other undisputed evidentiary facts, as testified to by the highway patrolman, was that by actual measurement Car D laid down 285 feet of skid marks before its impact with Car C and that the skid marks laid down by Car D did not commence until a point approximately 305 feet east of the crest of the hill. The vehicles B and C were all completely stopped before vehicle D came over the crest of the hill.

The evidence pertaining to the grade of the road from the crest to the bottom of the hill varied as being between 10 and 20 percent.

The plaintiff was driving the tractor-trailer approximately 35 miles per hour just before going into the ditch according to his statement to the patrolman and according to the estimated speed by the patrolman.

The patrolman testified about rocks being on the north shoulder of the road and that he could see that the tractor had hit a rock about six inches in diameter just before sliding into the bar ditch; that his investigation did not disclose any skid marks having been made by the plaintiff's tractor-truck.

The plaintiff on cross examination testified that he was about 100 feet from Car A when he first saw the three cars. The following question was then asked:

"Q. Can you tell me why you didn't see him in that 2012 feet? Do you know why you didn't see him?

"A. It was raining and water on my windshield I had my wipers working."

Plaintiff argues that the patrolman gave this defendant a ticket for improperly stopping his car on the highway. Several hours after the accident the defendant appeared at the home of the proper justice of the peace. It is contended by plaintiff that defendant pleaded guilty to the charge. Defendant contends that the justice asked him if he would plead guilty and the defendant answered no. Defendant stated that the justice informed him he could post a bond or pay $10.00 fine and costs. That defendant put up the money but contended he never pleaded guilty but did put up the money in the nature of a bond. The testimony of the justice is not a part of the record and the question of whether defendant pleaded guilty is not decided and at any rate not decisive of this appeal.

From the above facts, the question to be determined is did the alleged acts of negligence of the defendant Thur proximate cause or contribute to the occurrence and resulting damages to plaintiff.

■ This court has long been committed to the rule that the proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury. Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277; Cheatham v. Van Dalsem, Okl., 350 P.2d 593; Evans v. Caldwell, Okl., 429 P.2d 962; Mote v. Hilyard, Okl., 358 P.2d 844; and Transport Indemnity Company v. Page, Okl., 406 P.2d 980.

In the case of Transport Indemnity Company v. Page, supra, we quoted from the case of Norman v. Scrivner-Stevens, supra, wherein it was said:

" 'The question whether the negligence charged was the proximate cause of an injury is to be determined according to the natural and probable consequences.' and that 'Generally it is held that negligence which only serves to furnish the opportunity for injury cannot be the proximate cause where injury occurs as a direct result of an intervening force. The law does not charge a person with all possible consequences of a wrongful act, but ignores remote causes and looks for the proximate cause of the injury. Upon the basis of repeated consideration the rule gradually evolved is that where the negligence complained of only creates a condition, which thereafter is acted upon by a subsequent independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof. And, this is true though injury would not have occurred except for the original act.' "

The rule of law and reasoning therein as set forth in the above cited cases has been followed by the Court of Appeals, Tenth Circuit, in the case of Beesley v. United States, 364 F.2d 194, wherein that court said:

"Thus the proximate cause of an event must be that which in the natural and continuous sequence, unbroken by any independent cause, produces that event and without which that event would not have occurred."

Also see the case of Haworth v. Mosier, 10 Cir., 395 F.2d 566 (1968).

At the time the Sharp Car (D) left the crest of the hill he saw the three cars A, B and C stopped in the highway. At that time he was approximately two regular city blocks behind the rear of Car C. By actual measurement the skid marks made by his car were 285 feet in length before the impact with Car C, and the skid marks did not commence until a point approximately 305 feet east of the crest of the hill. The evidence is sufficiently clear for the jury to have found, as it did, that had Sharp been driving in a prudent manner and without negligence he could have stopped his car behind Car C if he had been observant of the danger confronting him, or he could have slowed his speed to permit the passage of plaintiff's truck-trailer.

The plaintiff leans heavily upon the case of Breno v. Weaver, 208 Okl. 14, 252 P.2d 487. This case is factually distinguishable from the present case. In the cited case the cars were in the same lane of traffic. Bruno stopped in the lane of traffic causing the gasoline truck to stop quickly, which caused plaintiff's car to collide with the gasoline truck. In the present case Cars B and C had completely stopped as much as a minute or two before defendant Sharp's car crashed into Car C.

■ The series of unfortunate events was caused by the intervening negligence of defendant Sharp. The alleged negligence of defendant Thur was broken by the subsequent intervening acts of the defendant Sharp and the accident would not have happened but for his negligence. The act of defendant Thur was remote and not the proximate cause of plaintiff's damages, and we so hold.

■ We have held that negligent parking creates but a condition that is not actionable when followed by intervening circumstances such as is here presented, and that proximate cause under such circumstances is a matter of law for the court and if submitted to the jury as a question of ultimate fact it is reversible error. Transport Indemnity v. Page, supra.

Such cases are always difficult for the trial court, and very regretful, yet, we are of the opinion that the independent negligent act of the defendant Sharp was the efficient cause leading to the accident.

We conclude that the trial court erred in not sustaining the defendant's motion for judgment notwithstanding the verdict.

The cause is reversed with directions to enter judgment for the defendant.

IRWIN, C. J., BERRY, V. C. J., and BLACKBIRD, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.

WILLIAMS, J., dissents.