**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

O. J. OF STILLWATER, INC., f/k/a
Oklahoma Joe's, Inc.,

    Plaintiff,

v.

VISIONTRADE AG,

    Defendant-Third-Party Plaintiff-
Appellant,

v.

JOE DAVIDSON; BARRY L. ELLER;
and JERRY CARPENTER,

    Third-Party Defendants,

and

W. C. BRADLEY CO. and NEW
BRAUNFELS SMOKER COMPANY,
INC.,

    Third-Party Defendants-
Appellees.

No. 99-6270
(D.C. No. CIV-98-534-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRORBY**, **McKAY**, and **MURPHY**, Circuit Judges.

This diversity action pits an estranged barbecue distributor against both its manufacturer and a purchaser of the manufacturer's assets. All claims between the distributor and manufacturer have been settled. However, the distributor maintains third-party claims against the asset purchaser for tortious interference and fraudulent conveyance. The district court granted summary judgment in favor of the purchaser. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. See Byers, 150 F.3d at 1274.

Appellant Visiontrade AG is a corporation that imports and distributes American leisure products in Europe. In 1993, Visiontrade's Managing Director discovered a set of barbecue grills produced by O.J. of Stillwater, Inc., under the

trade name "Oklahoma Joe's." Intrigued, Visiontrade began purchasing grills, sauces, and related goods from OJ and reselling them in Europe. In 1995, Visiontrade concluded an agreement with OJ to serve as OJ's exclusive European distributor for a minimum of six years.

Initially, the relationship was a resounding success. Although OJ had never previously sold its products in Europe, its sales surged to $1.3 million in 1997 and were projected to reach $2.5 million in 1998. Visiontrade became OJ's largest customer, and the two began negotiations for an extended, exclusive distribution agreement.

However, problems arose both within OJ and between the two companies. OJ had traditionally strained to obtain adequate financing. In 1995, two investors loaned substantial sums of money to keep the business afloat; their financing increased until they eventually became OJ's sole shareholders. In 1997, new financial challenges caused OJ to have difficulty in making its payroll. In addition, OJ was forced to cease production for long periods that year. The Stillwater National Bank called its loans to OJ, and the investors were required to pay $1.8 million out of their personal funds. They were either unwilling or unable to provide the additional money OJ needed to survive.

Meanwhile, the relationship between OJ and Visiontrade worsened, even as Visiontrade's European order flow increased. OJ was almost constantly

delinquent in meeting its production requirements, shipped containers of incomplete or defective products, and had trouble tracking Visiontrade's accounts. On the other hand, OJ complained that Visiontrade was severely past due on its payments, adding to OJ's financial woes. Visiontrade declared OJ in breach of their agreement. OJ threatened to terminate the agreement altogether.

OJ approached a number of investors to bolster the company, generally with little success. Finally, in 1998, OJ concluded an agreement with W. C. Bradley Co. through its subsidiary, New Braunfels Smoker Company, Inc. While Bradley was aware of OJ's relationship with Visiontrade, it nevertheless chose to purchase OJ's trade name and a number of other assets from the company to expand its own distribution in Europe. Bradley loaned OJ $200,000 to keep OJ solvent until the transaction was finalized. Immediately after the purchase was completed, OJ terminated its relationship with Visiontrade.

Litigation commenced between OJ and Visiontrade, resulting in a dismissal with prejudice of all claims between the two and a settlement in favor of OJ. Visiontrade asserted a third-party complaint against Bradley on a number of claims. The district court granted Bradley's motion for summary judgment, and Visiontrade appeals. On appeal, only the claims of tortious interference and fraudulent conveyance persist.

Under Oklahoma law, a party claiming tortious interference with contract

or business relations must prove that (1) it has a business or contractual right that was interfered with; (2) the interference was malicious and wrongful and neither justified, privileged, nor excusable; and (3) the "damage was proximately sustained as a result of the complained-of interference."  Morrow Dev. Corp. v. American Bank & Trust Co., 875 P.2d 411, 416 (Okla. 1994);  James Energy Co. v. HCG Energy Corp., 847 P.2d 333, 340 (Okla. 1993).  Oklahoma cases describe proximate cause as "'the efficient cause which sets in motion the chain of circumstances leading to the injury.'"  Dirickson v. Mings, 910 P.2d 1015, 1019 (Okla. 1996) (quoting  Thur v. Dunkley, 474 P.2d 403, 405 (Okla. 1970)).  After Bradley has met its burden on motion for summary judgment, Visiontrade must show that a genuine issue of fact exists as to whether Bradley set in motion the chain of circumstances leading to OJ's termination of its agreement with Visiontrade.  The district court held that Visiontrade did not meet its burden to show proximate cause.

In its motion for summary judgment, Bradley argued that Visiontrade presented no evidence indicating that Bradley proximately caused OJ's eventual termination with Visiontrade.  In addition, Bradley pointed out that, according to Visiontrade's own pleadings, OJ was in breach and threatening termination of the agreement prior to engaging Bradley as a potential investor.  Finally, Bradley showed that OJ had severe financial problems, which caused payroll shortages,

-5-

production shutdowns, and bank foreclosure. The undisputed evidence is that only when shareholders, banks, and other investors refused to support OJ further, OJ reached out to Bradley, and Bradley accepted OJ's offer of sale.

In its response to Bradley's motion, Visiontrade declared that Bradley's loan to OJ prior to closing the asset purchase had bailed OJ out financially and that the actual purchase days later was an act of interference which induced OJ to sever its contractual relations with Visiontrade. Visiontrade seeks to bifurcate the set of transactions between Bradley and OJ to show that OJ would have been willing and able to perform the agreement but for Bradley's "second act" of interference. However, there is nothing more than speculation to rebut Bradley's evidence that Bradley did not tender the loan as a separate act, but in contemplation and to insure the success of its imminent purchase. Bradley would not have provided the loan absent the asset purchase.

Other than the Bradley loan, Visiontrade presented only three "plausible scenarios" by which OJ could have avoided bankruptcy without selling its assets to Bradley. These conjectures did not meet Visiontrade's summary judgment burden.

To defeat a properly supported motion for summary judgment, "the nonmovant cannot rest upon his or her pleadings, but 'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he

or she carries the burden of proof.'" Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir.), cert denied, __ U.S. __, 120 S. Ct. 53 (1999) (quoting Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996)). In doing so, the nonmovant must identify sufficient evidence pertinent to a material issue by reference to affidavit, deposition transcript, or specific exhibit. See United States v. Simons, 129 F.3d 1386, 1388 (10th Cir. 1997). Mere speculation of plausible alternative scenarios will not suffice. See Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 734 (7th Cir. 1998).

We affirm the district court's holding that Visiontrade failed to meet its summary judgment burden. Visiontrade failed to show that a disputed issue of fact existed as to whether Bradley set into motion the chain of events leading to OJ's termination. Speculation as to OJ's financial options was insufficient, and facts regarding events prior to and independent of Bradley's appearance show that the OJ-Visiontrade relationship was damaged, if not broken, and that OJ was in desperate financial straits. Visiontrade even fails to show that, but for Bradley's involvement, OJ *would have* performed its obligations under the agreement; it is entirely irrelevant what OJ *might have* done. Visiontrade's failure to meet its burden on proximate cause makes it unnecessary to discuss the remaining elements of tortious interference. See Koch v. Koch Indus., Inc., 203 F.3d 1202, 1212 (10th Cir.), cert. denied, __ U.S. __, 121 S. Ct. 302 (2000).

-7-

Visiontrade's second claim seeks to void Bradley's purchase of OJ's assets as a fraudulent conveyance. Oklahoma has adopted the Uniform Fraudulent Transfer Act, OKLA. STAT. tit. 24, §§ 112-123 (2000). The Act voids a "transfer made or obligation incurred by a debtor [that] is fraudulent as to a creditor . . . ." tit. 24, § 116. The statute defines a "creditor" as "a person who has a claim." tit. 24, § 113(4). "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment . . . ." tit. 24, § 113(3).

Visiontrade does not have a claim against OJ, and is therefore not a creditor and not entitled to maintain an action of fraudulent conveyance against Bradley. All claims asserted against OJ were dismissed with prejudice by the district court on June 18, 1999, pursuant to a settlement agreement entered into by Visiontrade, OJ, and the two investors. Visiontrade can no longer claim to be a creditor of OJ. In fact, OJ is now a creditor of Visiontrade. Pursuant to the agreement, the district court entered judgment against Visiontrade and in favor of OJ in the amount of $78,000 plus attorneys' fees. The dismissal of Visiontrade's claims against OJ renders Visiontrade's claim of fraudulent conveyance moot.

In the parties' briefs, there is a great deal of dispute as to whether Visiontrade adhered to the district court's Local Rule 56.1(c). Having affirmed for Bradley and New Braunfels on the merits, we need not reach that issue.

AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge