2002 OK 76

Tom IGLEHART and Brenda Iglehart, husband and wife, Plaintiffs/Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY, Oklahoma, and Verdigris Valley Electric Cooperative, Defendants/Appellees,

Ed Hutchinson and Shirley Hutchinson, husband and wife, Defendants.

No. 95,585.

Supreme Court of Oklahoma.

Oct. 1, 2002.

Larry L. Oliver, Larry L. Oliver & Associates, P.C., Tulsa, OK, for Appellant Brenda Iglehart.

Bill Shaw, Shaw, Crutchfield & Shaw, Claremore, OK, for Appellant Tom Iglehart.

Brian E. Dittrich, Karla M. Rogers, Whitten, Nelson, McGuire, Wood, Terry, Roselius & Dittrich, Tulsa, OK, for Appellee Verdigris Valley Electric Cooperative.[1]

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

OPALA, J.

¶ 1 The dispositive issue presented on certiorari is whether a utility company owes a duty of care to motorists on roadways adjacent to the utility company's power lines when it is foreseeable that negligently maintaining trees underneath its lines could pose a road hazard to traveling motorists. We answer the question in the affirmative and hold that the Court of Civil Appeals erred in affirming the trial court's summary judgment for Utility Company.

## I

## THE ANATOMY OF LITIGATION

¶ 2 This is a negligence action arising from an automobile accident. On 5 April 1997 Brenda Iglehart (plaintiff or Mrs. Iglehart) was driving east in Rogers County on county road EW 39 and failed to stop where that road intersected county road NS 418. Traffic on NS 418 had the right-of-way. As she crossed the intersection, she was broadsided by a car traveling south on NS 418. Mrs. Iglehart and her husband, who joined her to press his own claim for loss of consortium (collectively called plaintiffs), allege that a large white pine tree located approximately thirty-three (33) feet west of a stop sign on the southwest corner of the intersection obstructed Mrs. Iglehart's view of the sign, and that a proximate cause of the accident was her inability to see the sign.

¶ 3 Among the other defendants, plaintiffs sued the Verdigris Valley Electric Coopera-

tive (Utility Company) *which owns the easement* where the tree is located. Plaintiffs contend Utility Company negligently maintained the tree by "topping" it (cutting off the top) in order to keep the tree limbs from interfering with Utility Company's electric lines passing above the tree. By so doing, plaintiffs allege, Utility Company caused the tree to grow laterally and more densely, obscuring the stop sign in a foreseeable fashion. According to plaintiffs, Utility Company owes a duty of care to motorists traveling on the adjoining roadway, or, in the alternative, at least a duty to warn of a hazardous condition within its control, and that its breach of this duty directly caused plaintiffs' injuries.

■ ¶ 4 The trial court gave summary judgment to Utility Company as well as to Board of County Commissioners of Rogers County (Board). Plaintiffs brought separate appeals from the adverse summary judgments. The Court of Civil Appeals (COCA) consolidated the appeals and reversed the summary judgment for Board, *but upheld that given in favor of Utility Company.* COCA held that a utility company does not owe a duty of care to travelers on roads adjacent to its power lines which are under its maintenance. For this view COCA relies on cases from the Oregon[2] and Texas[3] appellate courts and on the Restatement (Second) of Torts § 363(1).[4]

¶ 5 We granted certiorari on plaintiffs' petition for review of the summary judgment for Utility Company (95,586).

---

2. COCA relied on the *Court of Appeals opinion* in *Slogowski v. Lyness,* 131 Or.App. 213, 884 P.2d 566 (1994), which the Oregon Supreme Court *vacated* (324 Or. 436, 927 P.2d 587 (1996)). For a discussion of the Supreme Court's pronouncement, see Part III(A) ¶ 11, *infra.*

3. *Felts v. Bluebonnet Electric Cooperative, Inc.,* 972 S.W.2d 166 (Tx.App.-Austin 1998). COCA cites *Felts* for the view that (a) utility companies owe only the duty to keep trees and vegetation from interfering with the electric lines and that (b) the right to trim or clear trees to protect the power lines does not create a broader duty to maintain trees within the easement for the protection of the general public traveling on an adjacent road or highway. *Felts* is factually distinguishable from this case. There, the court decided in favor of the electric utility company

because the tree in question was **outside** the company's easement, not because of a lack of a duty of care.

4. The terms of § 363(1) of the Restatement (Second) of Torts state that possessors of land in non-urban areas bear no liability for injuries resulting from a "natural condition of the land." Comment (a) to § 840 of the Restatement (Second) of Torts defines "natural condition" as "a condition that is not in any way the result of human activity." While the area surrounding the accident site was admittedly not urban in character, it is undisputed that the tree in question was *planted* by the landowners and then *topped* by the utility company. The harm-dealing tree would hence not be considered a "natural condition of the land" within the meaning of §§ 363 and 840.

## II

## SUMMARY JUDGMENT AND THE STANDARD FOR ITS REVIEW

 ¶ 6 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [5]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[6] Summary process is applied where neither the material facts nor any inferences that may be drawn from undisputed facts are in dispute, *and* the law favors the movant's claim or liability-defeating defense. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered by the parties in acceptable form.[7] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary adjudication.[8]

 ¶ 7 Oklahoma's summary adjudication process is similar, but not identical, to that followed in the federal judicial system.[9] In Oklahoma, the focus of summary process is not on facts a plaintiff might be able to prove at trial (*i.e.,* the legal sufficiency of evidence that could be adduced), but rather on whether the evidentiary material, viewed as a whole, (a) shows undisputed facts on some or all material issues and whether such facts (b) support but a single inference that favors the movant's quest for relief.[10]

 ¶ 8 Summary relief issues stand before us for *de novo* examination.[11] All facts and inferences must be viewed in the light most favorable to the nonmovant.[12] Just as nisi prius courts are called upon to do, so also appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[13] Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[14]

---

5. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Oklahoma Memorial Hosp.,* 1995 OK 112, ¶ 15 n. 35, 909 P.2d 765, 773 n. 35. *See also Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, ¶ 18, 894 P.2d 1077, 1080–81; *Davis v. Leitner,* 1989 OK 146, ¶ 15, 782 P.2d 924, 926–27.

6. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the tendered proof in the record reveals only undisputed material facts *supporting but a single inference* that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n.,* 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, ¶ 8 n. 15, 777 P.2d 932, 936 n. 15.

7. *Polymer, supra* note 6 at ¶ 8, at 113.

8. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman,* 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

9. *Russell, supra* note 8, at ¶ 7, n. 7, at 497, 111 S.Ct. 1217; *compare Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

10. *Polymer, supra* note 6, at ¶ 7, at 112; *Hulsey, supra* note 6 at ¶ 8 n. 15, at 936 n. 15.

11. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is thus reviewable by a *de novo* standard. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

12. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

13. *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

14. It is not the purpose of summary process to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case (or eliminating from trial some of its

## III

### UTILITY COMPANIES OWE A DUTY OF CARE TO TRAVELING MOTORISTS WHO *FORESEEABLY* MAY BE INJURED BY NEGLIGENCE IN MAINTAINING THEIR UTILITY LINES

¶ 9 To establish negligence liability for an injury, plaintiffs must prove that (1) defendants owed them a *duty to protect* them from injury, (2) defendants *breached that duty,* and (3) defendants' *breach was a proximate cause* of plaintiffs' injuries.[15] The burden is not cast upon plaintiffs to establish that defendants were negligent in order to escape defendants' motion for summary judgment. Rather, to avoid trial for negligence, *defendants must establish through unchallenged evidentiary materials* that, even when viewed in a light most favorable to plaintiffs, *no disputed material facts exist* as to any material issues and that the law favors defendants.[16] Utility Company contends that (1) no duty existed and that (2) if a duty existed, the company did not breach it, and that (3) its actions were not a proximate cause of plaintiffs' injuries.

### A.

#### The Utility's Duty of Care

¶ 10 The **threshold question** for negligence suits is whether a defendant owes a plaintiff a duty of care.[17] We recognize the traditional common-law rule that whenever one person is by circumstances placed in such a position with regard to another, that, if he (she) did not use ordinary care and skill in his (her) own conduct, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.[18] Among a number of factors used to determine the existence of a duty of care, **the most important consideration is foreseeability.**[19] Generally a "defendant owes a duty of care to all persons who are foreseeably. endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous."[20] **Foreseeability establishes a "zone of risk,"** which is to say that it forms a basis for assessing whether the conduct "creates a generalized and foreseeable risk of harming others."[21]

¶ 11 The question of whether a duty is owed by a defendant is one of law; a breach of that duty is a question of fact for the trier.[22] We hold that a utility company indeed owes a duty of care to traveling motorists on adjoining roads when its substandard maintenance of trees could foreseeably cause danger to the public. The reasoning expressed by the Oregon Supreme Court in *Slogowski v. Lyness*[23] (as well as by the Pennsylvania Superior Court in *Beury v.*

issues) when only questions of law remain. *Russell, supra* note 8, at 503; *Bowers v. Wimberly,* 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

15. *Dirickson v. Mings,* 1996 OK 2, ¶ 7, 910 P.2d 1015, 1018–19.

16. *Malson v. Palmer Broadcasting Group,* 1997 OK 42, ¶ 12, 936 P.2d 940, 943, *citing White v. Wynn,* 1985 OK 89, ¶ 10, 708 P.2d 1126, 1129.

17. *Wofford v. Eastern State Hosp.,* 1990 OK 77, ¶ 8, 795 P.2d 516, 518. We note that "[Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law on Torts (3d ed.1964) at pp. 332–333)," *quoted in Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976).

18. *See Heaven v. Pender,* 11 Q.B.D. 503, 509, 1883 WL 19069 (1883).

19. *Wofford, supra* note 17, at ¶ 11, at 519 (*quoting Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976).

20. *Wofford, supra* note 17, ¶ 11, at 519.

21. *Delbrel v. Doenges Bros. Ford, Inc.,* 1996 OK 36, ¶ 8, 913 P.2d 1318, 1321. *See also McCain v. Florida Power Corp.,* 593 So.2d 500, 502–03 (Fla. 1992). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* at 503.

22. *Wofford, supra* note 17, at ¶ 22, 795 P.2d at 520.

23. *Supra* note 2.

*Hicks* )[24] is persuasive here. In *Slogowski* the court recognized that it was potentially foreseeable to a utility company that a tree it maintained could cause a hazardous condition to motorists on an adjacent roadway.[25] The court reasoned that *once having undertaken the task of trimming and inspecting trees within its easement,* a party must act reasonably in the exercise of that task.[26] In *Beury*[27] the court upheld liability imposed upon a power company for failing reasonably to maintain trees along a highway next to the company's power lines.[28]

## IV

**THERE ARE DISPUTED ISSUES OF MATERIAL FACT AS TO UTILITY COMPANY'S BREACH OF ITS DUTY OF CARE TO TRAVELING MOTORISTS WHO FORESEEABLY MAY BE INJURED AND THE PROXIMATE CAUSATION OF THE ACCIDENT; WHENEVER DISPUTED FACTS STAND TENDERED, SUMMARY ADJUDICATION IS INAPPROPRIATE**

### A.

*Disputed Issue of Fact As To Foreseeability Of The Injuries*

■■ ¶ 12 Plaintiffs have *raised a disputed issue of fact as to the foreseeability of the injuries* suffered by them in a manner sufficient to avoid summary process. According to the affidavit of plaintiffs' expert witness, James R. Morgan, the white pine tree in question

> "has been 'topped.' The main tree trunk has been cutoff [sic] in the upper quadrant of the tree. Once this occurs, the upward growth is halted. The tree growth then occurs (a) by increasing density; and (b) by increased limb growth."

Mr. Morgan's affidavit goes on to state that these consequences are

> "particularly true for this type of pine tree. This information is commonly known to those who cut trees. The 'topped' tree must grow somehow as it matures with age. If it cannot grow upward, it grows outward and in density. It is common knowledge that Pine [sic] trees, when topped, increase in density."

■■■ ¶ 13 Utility Company challenges the certainty with which Mr. Morgan may make such statements as to this particular tree, noting that he had not seen the tree before it was topped. The record reveals no Utility Company's challenge to this affidavit. When one fails in summary process timely to challenge any aspect of an evidentiary substitute, one's objection is waived and the unobjected-to materials will be deemed to have been properly included for the court's consideration.[29] Plaintiffs direct us to another expert witness, William Pickhart, whose affida-

---

**24.** 227 Pa.Super. 476, 323 A.2d 788 (1974).

**25.** *Slogowski, supra* note 2 at 590.

**26.** *Id.* at 590, 884 P.2d 566. While *Slogowski* is not precisely on point (because it deals with a tree that created a hazard by falling onto a roadway rather than obstructing a view of a stop sign) it lends support to the view that electric utility companies owe a duty to persons traveling on roads adjacent to electrical lines reasonably to maintain trees in their care.

**27.** *Supra* note 24, at 790. In *Beury* the plaintiff's decedent was killed when a tree limb fell upon his automobile. A wrongful death action was brought against the property owners and a utility company based upon negligent inspection. The latter had performed highway maintenance and inspection services on the owners' trees adjoining the power lines for a quarter of a century.

**28.** Our rationale for imposition of liability is *also* supported by the common-law rule that a public utility is liable for negligence toward others in performing (or failing to perform) work that is part and parcel of the utility's duty to maintain its facilities. Restatement (Second) of Torts § 428. This duty is *nondelegable.* In *Bouziden v. Alfalfa Coop., Inc.,* 2000 OK 50, 16 P.3d 450, the court refused to extend *nondelegable liability* to "all other third parties," *id.* at ¶ 22, at 457–58. Today's pronouncement does not contradict *Bouziden,* but merely notes that, consistently with the terms of Restatement (Second) of Torts § 428, this *nondelegable duty* extends to *foreseeably injured third parties.*

**29.** *Seitsinger, supra* note 5 at ¶ 14, at 1080. There is here no properly and timely submitted record-supported objection to either the affiant's qualification for the expert opinion given or to the admissibility of that opinion at trial.

vit makes essentially the same causal linkage between topping a tree and its increased density, noting that such growth is a foreseeable consequence of the topping. *While withholding ultimate judgment* on the probative effect of these expert witnesses' materials, at this stage of summary process review, *we must view facts in the light most favorable to plaintiffs.*[30] Mindful of this rule, we hold that—given the **proximity of the tree to the stop sign** and the common-sense notion that **without a visible stop sign, an intersection,** such as that here in question, **poses an obvious hazard**—plaintiffs raise a disputed issue of material fact as to the foreseeability of the accident arising from the action and/or inaction of Utility Company. Foreseeability must hence be left for a jury evaluation.

¶ 14 In sum, it is undisputed that defendant Utility Company "topped" the tree in question, but did not otherwise trim it, and that no warning was given to traveling motorists. The **extent to which the tree obscured or obstructed the stop sign** from the view of motorists on EW 39 tenders a disputed issue for the trier's determination. It is for a jury to decide whether **topping, but failing to trim the tree** laterally or **to warn motorists** of the obstruction caused by the tree in issue, is a breach of the duty to which we hold the defending Utility Company.

**B.**

### A Disputed Issue Of Material Fact Exists As To Proximate Causation

¶ 15 Oklahoma law defines proximate cause as "the efficient cause which sets in motion the chain of circumstances leading to the injury."[31] Generally, the proximate cause of an injury in a negligence case is an issue of fact for the jury.[32] It becomes a question of law for the court **only when** there is no evidence from which a jury could reasonably find a causal nexus between the act and the injury.[33] According to plaintiffs' expert witnesses, the defendant's actions reasonably may be found to provide a direct causal link to blocking the view of the stop sign and, thus, to the accident causing plaintiffs' injuries. We hence hold that proximate cause presents here a disputed issue for the trier of fact.

¶ 16 Because these disputed issues of fact remain unresolved, the summary adjudication for Utility Company was in error. It must now stand reversed.[34]

**V**

### UTILITY COMPANY'S RELIANCE ON § 11–401(A) OF THE HIGHWAY SAFETY CODE IS MISPLACED

¶ 17 Utility Company attempts to avoid trial by arguing that the terms of § 11–401(A) of the Highway Safety Code[35] required plaintiff to yield the right-of-way to

---

**30.** *Carmichael, supra* note 12 at ¶ 2, at 1053.

**31.** *Dirickson, supra* note 15, at ¶ 9, at 1018, *quoting Thur v. Dunkley,* 1970 OK 157, 474 P.2d 403, 405. Proximate cause has also been called "direct cause." It has been defined in the Oklahoma Uniform Jury Instructions as "a cause which, in the natural and continuous sequence, produces injury and without which the injury would not have happened." *Tomlinson v. Love's Country Stores, Inc.,* 1993 OK 83, n. 6, 854 P.2d 910, 916.

**32.** *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 37, 977 P.2d 1040, 1054; *Dirickson, supra* note 15, *citing Tomlinson, supra* note 31.

**33.** *Dirickson, supra* note 15 at ¶ 9, at 1018, *citing Tomlinson, supra* note 31 at 916.

**34.** Where on the judgment's reversal a cause is remanded, it returns to the trial court as if it had

never been decided, save only for the "settled law" of the case. *Seymour v. Swart,* 1985 OK 9, ¶¶ 8–9, 695 P.2d 509, 512–513; *Russell, supra* note 8, at ¶ 35, at 504. By today's remand the parties are relegated to their prejudgment status.

**35.** The provisions of 47 O.S.Supp.1997 § 11–401(A) **(effective 1 November 1997)** were:

A. The driver of a vehicle on a county road approaching an intersection with a state or federal highway shall, *whether a stop sign is present or visible,* stop and yield the right-of-way to a vehicle which has entered the intersection or *which is so close thereto as to constitute an immediate hazard.* The driver of a vehicle on a private drive or any road not maintained by the county or state approaching an intersection with a county road designated as a thoroughfare, as established by resolution of the board of county commissioners, *shall stop and yield the right-of-way to a vehicle which has entered the intersection or which is*

oncoming traffic, *regardless of whether "a stop sign is present or visible."* According to Utility Company, Mrs. Iglehart's act of negligently entering the intersection without yielding the right of way, **as required by § 11–401(A),** constitutes a "supervening act of negligence" which insulates it from the legal consequences of topping the tree in question. In other words, because Mrs. Iglehart was negligent in her driving, Utility Company could not be answerable in law for the accident.

¶ 18 **This argument fails to negate** the existence of a *material fact issue as to the proximate cause of plaintiffs' injuries.* First, Utility Company relies on statutory text not in force on the date of the **5 April 1997** accident. The pertinent language, *"whether a stop sign is present or visible,"* was added to § 11–401 by a 1997 amendment that became effective **1 November 1997.** Second, although both the 1997 version of § 11–401(A) and that in force on *April 5* (47 O.S.Supp.1996 § 11–401(A)) [36] required drivers to yield the right of way, their terms addressed solely those circumstances where drivers are crossing roads of *higher class order*—for example, where a **county road** intersects a state or federal highway or where a **private drive** (or a **road not maintained** by the county or state) intersects a county road.[37] The accident in question occurred at the intersection of roads of *equal class order*—two county roads.

## VI

### SUMMARY

■ ¶ 19 A utility company owes a duty of care to traveling motorists who foresee-ably may be injured by its act or omission. Whether the utility exercised a proper degree of care vis-a-vis plaintiffs in the maintenance of the "topped" tree whose dangerous condition should have been anticipated *presents a disputed issue of fact.* Where material facts are disputed, summary adjudication is improper and cannot stand. The cause must be remanded for a nisi prius resolution of all untried issues tendered (or to be tendered).

¶ 20 On certiorari granted on plaintiffs' petition, the opinion of the Court of Civil Appeals is vacated only insofar as it relates to the now-reversed summary judgment for Utility Company; the trial court's summary judgment for Utility Company is reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

¶ 21 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS and BOUDREAU, JJ., concur.

¶ 22 WINCHESTER, J., dissents.

*so close to the intersection as to constitute an immediate hazard.*
(emphasis added).

**36.** The pertinent terms of 47 O.S.Supp.1996 § 11–401(A), the version in effect at the time of the April 5 accident, were:
A. The driver of a vehicle on a *county road approaching an intersection with a state or federal highway shall stop and yield the right-of-way* to a vehicle which has entered the intersection or which is so close thereto as to constitute an immediate hazard. The driver of a vehicle on a *private drive* or *any road not maintained by the county* or *state approaching an intersection with a county road designated as a thoroughfare,* as established by resolution of the board of county commissioners, *shall stop and yield the right-of-way* to a vehicle which has entered the intersection or which is so close to the intersection as to constitute an immediate hazard....
(emphasis added).
The provisions of § 11–401 were amended in 1997, 1999 and 2002. None of these amendments affects the controversy before the court.

**37.** Even if the 1997 version of § 11–401(A) had been in force on the day of the collision in suit, Utility Company's argument fails to recognize that under the comparative negligence law more than one party could be negligent concurrently. It does not follow that because Mrs. Iglehart failed to stop at an essentially unmarked intersection she would not have stopped at one that was visibly marked.