**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID BEUGLER and DIANA
BEUGLER,

Plaintiffs-Appellants,

v.

No. 06-5093

BURLINGTON NORTHERN &
SANTA FE RAILWAY COMPANY,

Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 03-CV-0626-CVE-FHM)**

---

Charles W. Armbruster III, Michael T. Blotevogel, Gail G. Renshsaw, Wood
River, Illinois, and Robert Mitchell, Oklahoma City, Oklahoma, for Plaintiffs-
Appellants.

Juliet N. Brennan, A. Camp Bonds, Jr., Muskogee, Oklahoma, for Defendant-
Appellee.

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

While lifting a railroad crossing gate, appellant David Beugler, a railroad

conductor for Union Pacific, injured his neck and back by turning his body in

response to a truck horn. He sued another railroad, appellee Burlington Northern & Santa Fe Railway Company, for negligence, claiming that it was responsible for his injuries because he had to lift the gates while a Burlington Northern crew fixed a section of broken Union Pacific track. We hold that Burlington Northern did not have a common law duty to protect Mr. Beugler from injury in these circumstances. We therefore affirm the district court's order granting summary judgment to Burlington Northern.

## I.

On December 9, 2002, Mr. Beugler was conducting a train from Kansas to Arkansas when he encountered a problem at an interlocker—an intersection of a north-south railroad track and an east-west track—in Vinita, Oklahoma. The interlocker was shared by Union Pacific, his employer, and appellant Burlington Northern. Earlier that morning, two Burlington Northern employees had noticed a ten- to twelve-foot section of broken rail on Union Pacific's side of the interlocker. A Burlington Northern crew arrived to fix the track because appellee had contractual responsibility for maintaining the interlocker. The damage was such that the crew could not repair the existing piece of track; instead, they had to remove and replace it.

Burlington Northern's crew had already removed the damaged track before Mr. Beugler's train stopped at the interlocker, so Mr. Beugler could not continue until the repairs were finished. Mr. Beugler asked the crew how long it would

take to finish the repairs; they estimated it would take forty-five minutes to one hour.

During Mr. Beugler's discussion with the crew, Burlington Northern's signal maintainer approached the group and told them that "[t]he signal gates are down at Main Street." App. 45. This crossing was located on the Union Pacific line a short distance down the track from the interlocker. The Main Street gates activated, or dropped, because the removal of the interlocker track caused a break in the electric signal circuit that controls the gate. This false activation blocked the crossing and caused a back-up of vehicles on both sides of the rail line even though no train was approaching.

Burlington Northern's signal maintainer tried to fix the false activation by "jumping the track," which involves rerouting the electric signal around the damaged track to close the circuit. His efforts failed to fix the problem. Mr. Beugler, observing these events, decided to lift the signal arms manually at the Main Street crossing so that vehicles could proceed. He testified in his deposition that no one told him to do this. Appellant's App. 45. Rather, he did so because, "being the only [Union Pacific] authority connected with the road, at that location," he "felt like [it] was [his] responsibility to get traffic moving" along Main Street. *Id.* After his deposition concluded, Mr. Beugler testified in an affidavit that he also lifted the gates "in an effort to prevent Union Pacific, my employer, from being issued a citation for the obstruction of the crossing, and to

prevent myself, personally, from being issued a citation or arrested for the obstruction." *Id.* at 401.

Mr. Beugler testified that he had lifted gates manually his "whole life," or at least during the entire span of his thirty-four year career with Union Pacific. *Id.* at 117. He pegged the number of times he has manually lifted crossing gates at "more than 100." *Id.* at 399–400. He also has "witnessed other Union Pacific employees lifting crossing gates to let traffic through on more than 100 occasions when the gates where down due to a malfunction or other reason unrelated to motorist safety." *Id.* at 400.

Thanks to Mr. Beugler's experience, he knew that the gates would be light enough for him to lift with one hand, even though he had to hold the gates with his arm fully extended above his head to allow traffic to proceed through the crossing. He first lifted the gate blocking westbound traffic, then switched to the eastbound gate before returning to the westbound gate. At that point, a Vinita police officer arrived and asked if he could help Mr. Beugler lift the gates so that traffic could flow simultaneously in both directions. The officer then lifted the gate for eastbound traffic, while Mr. Beugler continued to lift the gate for westbound traffic.

After Mr. Beugler had been lifting the crossing gates manually for twenty minutes, the Burlington Northern crew finished the repair, so the crossing gates began functioning properly. But about one to two minutes before the repair was

finished—while Mr. Beugler was still lifting the gate for westbound traffic—he heard a truck horn. He thought the truck driver honked "to get [his] advice on whether the truck would be able to get through the gates." Appellant's Br. 21. Mr. Beugler, who was standing with his back to traffic, turned his neck to look at the tip of the gate to see if the truck could proceed without striking it. In doing so, he sustained injuries to his neck and back. Those injuries form the basis for this lawsuit.

Mr. Beugler sued Union Pacific under the Federal Employers' Liability Act, and Burlington Northern for common law negligence under Oklahoma law. The district court granted summary judgment in favor of Burlington Northern in February 2005, but did not certify the judgment as final under Rule 54(b). Mr. Beugler continued to litigate his claims against Union Pacific until December 2005, when those parties settled.

Days before settling with Union Pacific, Mr. Beugler filed a motion asking the district court to reconsider its summary judgment order in Burlington Northern's favor. He alleged he had obtained evidence since Burlington Northern was dismissed that supported his theory that his response to the false activation was foreseeable. The district court construed his motion as one for relief under Rule 60(b) of the Federal Rules of Civil Procedure and denied it on March 28, 2006, holding that all of Mr. Beugler's allegedly newly discovered evidence "was either available to the Court prior to its February 3, 2005 judgment [dismissing

-5-

Burlington Northern] or discoverable with due diligence." Appellant's App. 1134. The court also rejected Mr. Beugler's argument that it misinterpreted Oklahoma negligence law. Mr. Beugler filed a notice of appeal on April 17, 2006, appealing from the grant of summary judgment in favor of Burlington Northern and the denial of his motion to reconsider.[1]

## II.

**A.** **The District Court Correctly Held that Burlington Northern Did Not Owe Mr. Beugler a Duty of Care.**

In diversity cases, federal courts apply principles of state substantive law announced by the State's highest court. *See Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1134 (10th Cir. 2006). "To establish negligence liability for an injury" under Oklahoma law, "plaintiffs must prove

---

[1]We reject Burlington Northern's argument that Mr. Beugler's appeal is untimely. *See* Appellee's Br. 9, 13. The thirty-day deadline in Federal Rule of Appellate Procedure 4(a)(1)(A) must be read in concert with Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1291. Our jurisdiction extends only to "final decisions," 28 U.S.C. § 1291, and in cases "involving multiple claims or parties, "any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is final—and thus appealable—only if "the court . . . direct[s] the entry of a final judgment as to one or more but fewer than all of the claims or parties." Fed. R. Civ. P. 54(b).

The district court did not issue a Rule 54(b) certification. Accordingly, had Mr. Beugler attempted to appeal the February 3, 2005, summary judgment order dismissing Burlington Northern within thirty days of that date, we would have lacked jurisdiction. *See Heimann v. Snead*, 133 F.3d 767, 769–70 (10th Cir. 1998). The time to file an appeal began to run on March 28, 2006, when the district court issued its final order dismissing all remaining claims. Mr. Beugler filed his notice of appeal on April 17, 2006, well within thirty days of that date. Mr. Beugler's notice of appeal was therefore timely.

-6-

that (1) defendants owed them a *duty to protect* them from injury, (2) defendants *breached that duty*, and (3) defendants' *breach was a proximate cause* of plaintiffs' injuries." *Iglehart v. Bd. of County Comm'rs of Rogers County*, 60 P.3d 497, 502 (Okla. 2002). The district court granted summary judgment in favor of Burlington Northern after holding that the railroad had no duty to protect Mr. Beugler from the harm he suffered, and that Mr. Beugler failed to introduce sufficient evidence to create a genuine issue of material fact as to proximate cause. *See* Appellant's App. 1007–08. On appeal, Mr. Beugler asks us to reverse both of these holdings. We agree with the district court's conclusion that Burlington Northern did not owe Mr. Beugler a duty of care and therefore need not address the district court's proximate cause holding.

"The threshold question for negligence suits is whether a defendant owes a plaintiff a duty of care." *Iglehart*, 60 P.3d at 502 (emphasis omitted). This is a question of law, *id.*, which courts resolve by examining "the relationship between the parties and the general risks involved in the common undertaking. . . . The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct for the benefit of the plaintiff." *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1320–21 (Okla. 1996). Many factors inform the duty analysis, but

> the most important consideration is foreseeability. Generally a
> defendant owes a duty of care to all persons who are foreseeably
> endangered by his conduct with respect to all risks which make the

conduct unreasonably dangerous. Foreseeability establishes a "zone of risk," which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others.

*Iglehart*, 60 P.3d at 502 (emphasis and some internal quotation marks and footnotes omitted).

We conclude that Burlington Northern did not owe Mr. Beugler—an employee of another railroad—a common law duty to protect him from injury in these circumstances. Burlington Northern's allegedly negligent conduct was repairing the broken track in such a way as to activate the crossing gate. This undoubtedly created a foreseeable zone of risk to a wide range of persons. But we need not define that zone's precise bounds in this case because, whatever they may be, another railroad's trained employee lifting crossing arm gates manually so that traffic can flow is not within them.

As Mr. Beugler's own evidence attests, railroad conductors are trained to safely and routinely lift gates. He testified that "[a]ll [the] old head conductors [he] ever worked with" trained him how to lift crossing gates, Appellant's App. 139; that he had lifted gates manually more than 100 times himself, *id.* at 399–40; that he had "witnessed other Union Pacific employees lift crossing gates to let traffic through on more than 100 occasions," *id.* at 400; and that because he had lifted gates "dozens of times," he did not foresee any possibility that he was going to hurt himself by lifting the Main Street crossing gates, *id.* at 143. Other

evidence establishes that lifting falsely activated crossing gates manually was a routine, "common practice." *Id.* at 1129–30 (affidavit of Mark Polk, a former Union Pacific employee, who also testified that he lifted gates more than 100 times); *see also id.* at 945–46 (affidavit of David Spriggs, a twenty-year veteran conductor, who testified that lifting gates manually was a "common occurrence" that he personally performed more than twenty-five times); *id.* at 775 (deposition of Richard Eldridge, a Union Pacific signal maintainer, who lifted gates "probably 50 times").

In light of this evidence, Burlington Northern actually *reduced* the zone of risk by informing Mr. Beugler of the Main Street false activation. Mr. Beugler was a trained professional whose actions decreased the likelihood of injury to those within that zone. An individual who suffers an ordinary and unforeseeable work injury in course of performing his professional duties to his employer cannot sue another person for creating the occasion for the performance of those duties, even if that person's action was negligent.

To be sure, Burlington Northern's conduct in repairing the track was certainly the first link in the chain of events that led to Mr. Beugler injuring himself. That seems to be Mr. Beugler's theory of how Burlington Northern was negligent. But under Oklahoma law, that is insufficient to establish the existence of a duty because it does not tether the foreseeability inquiry to the anchor the Oklahoma Supreme Court has specified: the "risks which make the conduct

unreasonably dangerous." *Iglehart*, 60 P.3d at 502 (internal quotation marks omitted).

Burlington Northern did not have a duty to protect Mr. Beugler from all possible injuries that might be spatially or temporally related to his stop at the interlocker while waiting for the crew to repair the track. Instead, Burlington Northern had a duty to protect him only from injuries traceable to "risks which make" lifting the gates "unreasonably dangerous." By Mr. Beugler's own evidence, it is not unreasonably dangerous for an experienced railroad employee to lift a crossing arm at a down-track railroad crossing; he has done this all his life and so have many others.

We point out in conclusion that this opinion discusses only Burlington Northern's common law duties because Mr. Beugler sought damages only for common law negligence. We do not address what effect, if any, the Federal Railroad Safety Act and regulations promulgated thereunder might have on this case. *Cf. Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211 (10th Cir. 2001) (declining to consider ERISA preemption where the parties failed to brief the issue).

**B.     The District Court Did Not Abuse Its Discretion by Denying Mr. Beugler's Rule 60(b) Motion.**

Finally, we address Mr. Beugler's contention that the district court erred by denying his Rule 60(b) motion. "Our task upon review" of a district court's

-10-

denial of a Rule 60(b) motion "is to determine only whether the district court abused its discretion in denying such relief." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1145 (10th Cir. 1990). When doing so, we are mindful that Rule 60(b) "relief is extraordinary and may only be granted in exceptional circumstances." *Amoco Oil Co. v. EPA*, 231 F.3d 694, 697 (10th Cir. 2000) (internal quotation marks omitted).

After reviewing the record, we are convinced that the district court's ruling was not an abuse of discretion. We agree with the district court's conclusion that the bulk of the "newly discovered evidence"—various affidavits and depositions and Mr. Beugler's responses to interrogatories, Appellant's App. 1133–34—was not in fact "new" because it was known or discoverable before the court entered summary judgment in favor of Burlington Northern. Appellant is correct that the Public Law Board ruling in favor of Mr. Beugler was entered on March 25, 2005, nearly two months after the court granted summary judgment to Burlington Northern. The district court was nonetheless within its discretion to deny the Rule 60(b) motion, however, because the Public Law Board's ruling simply finds that Union Pacific violated Mr. Beugler's employment agreement. That finding is irrelevant to the dispositive question in this case: whether, and to what extent, *Burlington Northern* owed Mr. Beugler a duty of care.

The circumstances of this case are far from those exceptional enough to warrant Rule 60(b) relief. We therefore affirm the district court's denial of Mr. Beugler's motion.

**III.**

The judgment of the district court is AFFIRMED.