**UNION BANK OF TUCSON, ARIZONA, Appellant,**

v.

**Cynthia GRIFFIN, d/b/a Bethany Tag Agency, Appellee.**

No. 62178.

Supreme Court of Oklahoma.

March 28, 1989.

Ross A. Plourde, Reynolds, Ridings & Hargis, Oklahoma City, for appellant.

Thomas G. Ferguson, Jr., Lisa S. Tipping, Kimball, Wilson & Walker, Oklahoma City, for appellee.

HARGRAVE, Chief Justice.

The issue before us is whether the trial court erred in granting summary judgment for defendant tag agent in an action brought by a foreign secured party alleging negligence of the tag agent in failing to note the plaintiff's lien on the Oklahoma vehicle certificate of title issued by defendant.

On September 21, 1979, Al and Esther V. Barkley gave plaintiff, Union Bank of Tucson, Arizona, a security interest in a 1979 Ford pickup for which plaintiff had loaned the purchase money. The security agreement of the same date provided that the Barkleys would not remove the collateral from the state of Arizona, nor attempt to sell same, without the prior consent of the plaintiff. An Arizona certificate of title was issued to the Barkleys, with Union Bank's lien duly noted on the face thereof, as required by Arizona law.

At an unspecified time thereafter, the Barkleys brought the vehicle to Oklahoma. On December 30, 1980, the Barkleys presented the Arizona vehicle certificate of title, which had plaintiff's lien noted thereon, to defendant Cynthia Griffin d/b/a Bethany Tag Agency. Defendant issued the Barkleys an Oklahoma vehicle certificate of title, but did not note plaintiff's lien on the face of the new certificate. Subsequently the vehicle was sold to a bona fide purchaser, who is not a party to the lawsuit. There is no indication from the record how long the vehicle had been in Oklahoma before the Arizona certificate of title was surrendered.

Plaintiff sued the tag agent for damages on December 29, 1982, alleging negligence for failure to note plaintiff's lien on the Oklahoma certificate of title, asserting that due to defendant's failure to note its lien, plaintiff's security interest was subordinated to the rights of the bona fide purchaser for value without notice in Oklahoma, under 12A O.S.1981 § 9–103.1(2)(d). Subsequently plaintiff added the Barkleys as party defendants and obtained a default judgment against them, which proved uncollectable. The defendant tag agent answered that she could not have been negligent

because there was no duty on her part to note plaintiff's lien on the Oklahoma certificate of title because plaintiff did not submit a lien entry form as required by the then-effective perfection statute, 47 O.S.Supp. 1980 § 23.2b.

Defendant moved for summary judgment, which was granted by the trial judge on March 23, 1984. The facts treated by the parties as undisputed are:

1. That plaintiff/appellant, Union Bank, is a state bank maintaining its principal office in Tucson, Arizona, and is chartered pursuant to the laws of Arizona.

2. That the tag agent, on or about December 30, 1980, received from the Barkleys an Arizona certificate of title for a 1979 Ford pickup and the Barkleys requested issuance of an Oklahoma certificate of title.

3. That the Arizona certificate of title had a notation thereon of a lien in favor of Union Bank.

4. That the Oklahoma certificate of title issued on or about December 30, 1980, did not reflect the lien in favor of Union Bank.

5. That no lien entry form was presented by any party at the time that the Oklahoma certificate of title was requested.

On appeal plaintiff argues that the tag agent was negligent in issuing a lien-free certificate of title to the Barkleys when it knew of the bank's outstanding claim. Defendant maintains that she cannot be negligent because there was no duty on her part to note the lien on the Oklahoma title certificate. She cites Title 47 O.S.Supp.1980 § 23.2b, which provided:

"... a security interest ... in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form, which shall be on a form prescribed by the Commission, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agree-

ment and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents ..."

Defendant asserts that because the plaintiff did not submit a lien entry form there was no duty to note plaintiff's lien on the Oklahoma certificate of title.

The statutory requirements for issuance of an Oklahoma certificate of title were set out at 47 O.S.Supp.1980 § 23.2a:

"... No certificate of title, whether an original or a duplicate ... shall be issued or furnished by the Commission unless the applicant therefor shall, at the same time, make application for and be granted an official Oklahoma certificate of title of such vehicle or shall present satisfactory evidence that such a certificate of title or registration covering such vehicle has been previously issued to the applicant."

Subparagraph 1 of § 23.2a lists the information required to be furnished in the application, including: a full description of the vehicle which shall include the manufacturer's serial or other identification number, the manufacturer's factory delivered price, the motor number and the date on which first sold by the manufacturer or dealer to the owner, and any distinguishing marks, together with a statement of the applicant's source of title and *any security interest upon said vehicle,* and such other information as the Commission may require.

The certificate of title acts were originally conceived as anti-theft statutes, designed to make it more difficult for thieves or fraudulent owners to dispose of vehicles through legitimate commercial channels.[1] Presumably, Oklahoma's requirement that the application disclose any security interests upon the vehicle is to alert the motor vehicle license agent so that any such liens can be noted on the Oklahoma certificate or other action can be taken before issuing the Oklahoma certificate. Section 23.2a(1) says "any security interest", which would include perfected as well as unperfected interests. To require an applicant to list

---

**1.** G. Gilmore, *Security Interests in Real Property,* (1965), Vol. 1, Chapter 20, p. 570.

any security interests would be meaningless if not for the purpose of protecting prospective buyers or creditors. Section 23.2b contemplates proper issuance of an Oklahoma certificate of title before perfection in Oklahoma can be accomplished. Section 23.2b says that a security interest in a vehicle "as to which a certificate of title may be properly issued" shall only be perfected when the prescribed steps are followed. We agree with plaintiff that, with regard to defendant's actions, the question is whether the certificate was properly issued, rather than whether plaintiff's security interest was properly perfected in Oklahoma.

Our reading of 47 O.S.Supp.1980 § 23.2a is that an Oklahoma certificate of title may be properly issued only when a fully completed application, or proof that an Oklahoma certificate had previously been issued to the applicant, is submitted and reviewed and the tag agent deems that the applicant is entitled to same. The duty to review the application to determine that issuance of an Oklahoma certificate of title is proper is evident from a reading of 47 O.S.1981 § 23.4, which provides:

> "If the Commission shall determine at any time that an applicant for a certificate of title of a vehicle is not entitled thereto, it may refuse to issue certificate or to register such vehicle."

The tag agents are the duly authorized representatives of the tax commission. The information required by statute to be included in the application indicates that a "clean" Oklahoma certificate could not properly be issued when there is an indication that the applicant is not the owner of the vehicle or when there is an outstanding security interest in the vehicle.

The record does not reflect whether the Barkleys fully completed an application for the Oklahoma certificate of title. In any event the existence of an outstanding security interest was evident on the face of the surrendered Arizona certificate of title. Defendant's argument that she owed no duty to plaintiff is not well taken. Duty of care is not a concept that arises only by statute. Purposely omitting plaintiff's lien, without further inquiry or investigation, is not excused by claiming that plaintiff failed to submit a lien entry form. The law imposes upon a person engaged in the prosecution of any work an obligation to use ordinary care to perform it in such a manner as not to endanger the property of others. Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury. *Bradford Securities Processing Services, Inc. v. Plaza Bank & Trust,* 653 P.2d 188 (Okl.1982). In the case at bar, defendant was the only person in a position to prevent the very result for which the certificate of title statutes were enacted. It is elementary that defendant knew or should have known that failure to note plaintiff's lien would forseeably result in a sale to a third party who would rely on the "clean" Oklahoma certificate of title.

In an action for injuries caused by defendant's negligence, it is a jury question whether the injurious consequences could reasonably have been forseen. Causation traditionally lies within the realm of fact, not law. *Keel v. Titan Construction Corp.,* 639 P.2d 1228 (Okl.1982). On the uncontroverted facts, a trier of fact could find that defendant's issuance of the lien-free Oklahoma certificate of title was the proximate cause of plaintiff's loss. By noting plaintiff's lien on the certificate of title, it would have been impossible for a subsequent purchaser to take without at least constructive notice of plaintiff's claim. Holding the certificate in abeyance until the status of the existing security interest was determined would have prevented plaintiff's loss.

Plaintiff cites two cases from other jurisdictions which found liability on the part of the state or its authorized licensing agents. In *VanNatta v. Crites,* 178 Ind.App. 113, 381 N.E.2d 532 (1978), a father noted his lien for $1,000.00 on the title to restrict his daughter's transfer of a vehicle. Subsequently his daughter applied for a certifi-

cate of title and on the application stated that there were no liens on the vehicle. The Indiana Bureau of Motor Vehicles issued a lien-free certificate in the daughter's name. The vehicle was then sold to a bona fide purchaser for value without notice. The father filed suit against the bona fide purchaser and was held to have a lien for $1,000.00, which was ordered to be endorsed upon the certificate of title. Subsequently the bona fide purchaser sued the Commissioner of the Bureau of Motor Vehicles and the court awarded the bona fide purchaser judgment against the Commissioner of the Bureau of Motor Vehicles for $1,000.00 plus costs, for negligence. The Commissioner appealed, alleging the trial court erred in finding that he was negligent in failing to note the existence of the father's lien on the certificate of title issued to the daughter. Defendant alleged that he violated no duty of care because the applicable statute required only that the certificate shall contain "a statement of any liens or encumbrances which the *application* may show to be thereon," implying that, since the application stated there was no lien, then there was no duty to list any lien. The court rejected that argument, saying that a thorough reading of the statute revealed that the Commissioner's duties "consist of more than merely copying information shown on an application". A further provision of the statute was that the department shall use reasonable diligence in ascertaining whether the facts stated in the application for certificate of title are true, "and if satisfied that the applicant is the lawful owner of such vehicle or is otherwise entitled to have same registered ..."

The court held that the Commissioner had a duty to demand surrender of the original certificate of title and to use reasonable diligence to ascertain whether the statements made in the application were true. The court stated:

"The exercise of reasonable diligence most certainly includes sufficient examination of the surrendered certificate of title to determine whether or not any liens are noted thereon. If Van Natta had used reasonable diligence, he would have been aware of the lien ... and that lien would have been noted on the certificate of title issued to Glenda Sue Simms."

In *Exchange National Bank of Tampa v. State,* 88 Misc.2d 444, 388 N.Y.S.2d 971 (N.Y.Ct.Cl.1976), a Florida perfected secured party had sued the bona fide purchaser used car dealer who had purchased the vehicle in New York after a clean New York certificate of title had been issued. The original secured party and the used car dealer settled. Pending before the Court of Claims were two claims: (1) the Florida secured party's claim against the New York Department of Motor Vehicles for damages for negligence in issuing the clean New York certificate of title, and (2) the New York used car dealer's claim against the Department of Motor Vehicles for the same actions. The Court of Claims found that the Department of Motor Vehicles had breached its separate duty to each claimant, that it was negligent, and that its negligence was the proximate cause of loss to each claimant, and that neither claimant was contributorily negligent. The existence of a duty on the part of the department was found because they knew or should have known the vehicle certificate of title would be relied upon in the regular course of business.

In the instant case there is no indication that the Barkleys omitted any information or wrongfully concealed the existence of the Union Bank's lien. The lien was present on the face of the surrendered Arizona certificate of title. Apparently the decision to omit plaintiff's lien was made solely by the defendant. It stretches credulity that a tag agent faced with prima facie evidence of an outstanding security interest can simply ignore the lien, issue a "clean" Oklahoma certificate of title and claim there was no duty to investigate further.

As an aside, it is unclear how an out-of-state secured party would ever be in a position to properly perfect its security interest in Oklahoma according to defendant's interpretation of the statute, where the debtor fraudulently attempts to obtain

**224**

a clean Oklahoma certificate. The perfection statute § 23.2b requires submission of a lien entry form along with the existing certificate of title or application for Oklahoma certificate of title. The debtor will be either in possession of the certificate of title or will have completed an application averring that there are no outstanding liens. Unless the tag agent holds the certificate and refuses to issue a new certificate without instruction from a secured party noted in the surrendered title, a foreign secured party will not be able to comply with our "delivery for perfection" statute.

█ The trial court's entering summary judgment for defendant as a matter of law is tantamount to a finding that there was no interpretation of the facts under which plaintiff could prevail. We have held that summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from the undisputed facts. *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336 (Okl.1978).

On a summary judgment motion inferences or conclusions that may be properly drawn from the evidence must be viewed in favor of the non-moving party, and the grant of summary judgment must be reversed if inferences contrary to those drawn by the trial court might be permissible. *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359 (4th Cir.1975). We believe that different conclusions could be drawn from the uncontroverted facts in this case and that the granting of summary judgment was improper.

The fact that the Oklahoma vehicle certificate of title statutes require submission of a lien entry form as a condition of perfection in Oklahoma does not excuse defendant's ignoring plaintiff's lien noted on the surrendered foreign certificate of title. The phrase "when a certificate of title may properly be issued" is used throughout the motor vehicle certificate and registration statutes. This phrase implies its converse; that is, that there are circumstances under which the Commission may not properly issue an Oklahoma certificate of title. It is a question for the trier of fact whether

defendant was negligent in issuing a clean Oklahoma certificate of title when there was a notation of an outstanding security interest on the surrendered title.

SUMMARY JUDGMENT VACATED; CAUSE REMANDED WITH INSTRUCTIONS TO PROCEED NOT INCONSISTENT WITH THIS OPINION.

All Justices concur.