2012 OK 86

**In re Jennifer Lynn JACKSON, Debtor.**

**Susan Manchester, Trustee, Plaintiff,**

v.

**Arvest Bank, Defendant.**

**No. 109,566.**

Supreme Court of Oklahoma.

Oct. 16, 2012.

Susan Manchester, Oklahoma City, Oklahoma, for plaintiff.

Lyle R. Nelson, Nicholas A. Johnson, Elias, Brooks, Brown & Nelson, P.C., Oklahoma City, Oklahoma, for defendant.

WINCHESTER, J.

¶ 1 The United States Bankruptcy Court for the Western District of Oklahoma certified a question of law pursuant to 20 O.S. 2011, § 1601 et. seq. The question presented is:

"May a certificate of title for a vehicle issued by the Oklahoma Tax Commission be deemed to have been 'properly issued', within the meaning of OKLA. STAT. tit. 47 § 1110.A.1, even though the vehicle is not one for which a certificate of title is required as proof of ownership under applicable Oklahoma law including, without limitation, § 1105.B.?"

¶ 2 The focus of this dispute is a horse trailer. We do not believe that answering the question as formulated by the Bankruptcy Court, of whether the certificate of title was "properly issued" settles the underlying issue of whether the bank has properly perfected its security interest in this horse trailer. Pursuant to 20 O.S.2011, § 1602.1, this Court will reformulate the question to read as follows: "Does the filing of a UCC–1 financing statement for a personal/recreational use horse trailer perfect the creditor's security interest where the Oklahoma Tax Commission has issued a discretionary certificate of title, and the creditor is not named on the title?"

## I. FACTS

¶ 3 On July 24, 2003, Jennifer Lynn Jackson, the debtor, purchased a horse trailer for personal use with the proceeds of a purchase-money loan from Arvest Bank, the defendant. On July 28, 2003, the Oklahoma Tax Commission issued to the debtor a certificate of title for the trailer. The bank filed a UCC–1 financing statement for the collateral on July 30, 2003, and a UCC continuation statement in 2008.

¶ 4 The focus of this case is the issuance of title by the Oklahoma Tax Commission to Jackson and the title's implications on the perfection of the bank's security interest in the trailer. That security interest was not recorded on the face of the certificate of title, nor did the bank take steps to record the security interest as provided in 47 O.S.2011, § 1110(A)(1). The debtor did not request that a title be issued. The manufacturer of the trailer had forwarded a statement of origin to an Oklahoma tag agent, who then issued the title.

¶ 5 Susan Manchester, as the trustee of record, seeks to avoid a perfected security interest by the bank in the trailer. She asserts that because title was issued and the lien was not noted on the title, the bank did not perfect its security interest and does not have a priority position in the bankruptcy proceeding.

## II. DISCUSSION

### A. Type of Collateral

¶ 6 The facts in the Bankruptcy Court's Order Requesting Answer to Certified Question reveal that the trailer in this case is a horse trailer with a dressing room.[1] The trustee asserts that this horse trailer is within the 47 O.S.2011, § 1102(35) definition of a "travel trailer" because, among other requirements, the trailer includes "a dressing room and a berth, which can be used as temporary living/sleeping quarters." The trustee asserts that such a "dressing room" implies that this vehicle contains a living space and is thus a travel trailer. Classifications as a travel trailer would require title to be issued.

¶ 7 Section 1102(35) includes within the definition that such a vehicle be used as a "temporary dwelling for travel." The meager features of this trailer simply do not meet this baseline requirement. While the trailer does include a "dressing room," we hold that having such a compartment in a horse trailer is not likely to have been within the contemplation of the legislature in its choice of the words "temporary dwelling," which is an element required by § 1102(35).

¶ 8 The final inquiry requires a determination of the word vehicle as used throughout Title 47. The overarching definition is provided in Title 47 O.S.2012 § 1102(40), and provides that a vehicle is "any type of conveyance [ ... ] upon or by which a person or property is or may be transported [ ... ]. Vehicle does not include bicycles, trailers except travel trailers and rental trailers, or implements of husbandry [ ... ]." We have already decided this horse trailer is not a travel trailer. There is nothing in the facts to indicate it is a rental trailer.

¶ 9 The trustee asserts that 47 O.S.2011, § 1110(A)(1) gives a contrary definition for vehicle by providing that "For the purposes of this section, the term 'vehicle' shall not include special mobilized machinery, machinery used in highway construction or road material construction and rubber-tired road construction vehicles including rubber-tired cranes." We conclude that this is not a contrary definition, but rather is a supplement to the general definition stated above.

¶ 10 The primary object of statutory construction is to determine the legislative intent. "That intent is ascertained from the whole act in the light of the general purpose and object." *Midwest City v. Harris*, 1977 OK 7, ¶ 6, 561 P.2d 1357, 1358. The terms "shall not include" found in § 1110(A)(1) do not replace the general definition in § 1102(40); they add to the definition for purposes of § 1110. As such, we find that because of the exclusions presented in the general definition, that a vehicle is not a travel trailer nor rental trailer, this personal use trailer is excluded from the definition of vehicle for the purpose of requiring title.

¶ 11 After consideration of the various definitions reviewed, this Court finds that the trailer in question is not a vehicle for the purposes of requiring title and registration within the State of Oklahoma.

### B. Title Requirement and Optional Title

¶ 12 Oklahoma law requires that all vehicles within the state must be registered and titled. Title 47 O.S.2011, § 1110(A)(1) provides in pertinent part that:

"a security interest in a **vehicle** as to which a certificate of title may be properly issued by the Oklahoma Tax Commission shall be perfected only when a lien entry form, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the Tax Commission or to a motor license agent." (emphasis added)

¶ 13 This Court has determined that this horse trailer does not meet the definitional requirements to be considered a vehicle, and thus is not required to be titled. Furthermore, 47 O.S.2011, § 1105(B)[2] does

---

1. Fact 2, p. 2, Order Requesting Answer to Certified Question

2. 47 O.S.2011, § 1105(B) provides in part: "The owner of every vehicle in this state shall possess a certificate of title as proof of ownership of such

not impose a requirement of title on such a trailer, because this section also applies only to a "vehicle" as defined by the act. The trailer in this specific situation does not meet the definitional requirements of a vehicle, therefore the proper place for a security interest to be perfected would be by the filing of a UCC–1 financing statement as provided by Article 9, Secured Transactions, codified at 12A O.S.2011, § 1–9–101 et. seq.

¶ 14 Perfection of a security interest by placement of notice on a title would be proper only in cases when the collateral meets the definitional requirements of "vehicle" provided in the Oklahoma Vehicle License and Registration Act, 47 O.S.2011, § 1101, et seq. Correct determination of placement of a security interest must focus on the type of collateral at issue, even though optional title may be available. *In re Ramco Well Service, Inc.*, 32 B.R. 525, ¶ 17, (Bankr.W.D.Okla. 1981).

¶ 15 The trustee cites *Union Bank of Tucson, Arizona v. Griffin*, 1989 OK 47, 771 P.2d 219 for the rule that the statute regarding perfection of a security interest contemplates proper issuance of an Oklahoma certificate of title before perfection can be accomplished, and the title may be properly issued when a fully completed application is submitted and reviewed by the tag agent, who is the duly authorized representative of the Tax Commission. However, this case is distinguishable on its facts because the vehicle was a 1979 Ford pickup, not a horse trailer. The trustee implies that when the Tax Commission determines that a certificate of title was properly issued, even if optional, the title is properly issued pursuant to Oklahoma law. However, such a presumption is not accurate. In the last paragraph of the *Griffin* case the Court reveals a trier of fact may determine that a tag agent was negligent in issuing a clean Oklahoma certificate of title. *Griffin*, 1989 OK 47, ¶ 22, 771 P.2d at 223. This case is not only distinguishable on its facts, the law found within the case also contradicts the asserted rule provided by the trustee.

### C. UCC Purpose

¶ 16 The allowance for owners to seek title to property that is not required to be titled, but still allowable, cannot have commercially impracticable results. Creditors and debtors alike enjoy the certainty that is afforded to them by the structure and steadfast interpretation of the laws. A holding different than ours would have serious ramifications for future business transactions. Lenders would be unreasonably burdened to ensure that all collateral presented was monitored on a regular basis to ensure that no title had been issued, triggering a further action by the lender. A lender should not be forced to constantly monitor situations that may possibly occur at the whims of debtors. To allow for such a theory to exist would frustrate commercial transactions, have a chilling effect on lending, and could possibly induce fraud.

¶ 17 The promulgation of the Uniform Commercial Code as adopted and codified in Oklahoma in title 12A is designed to provide for commercial reasonableness and certainty within the law. The mandate by the legislature as provided in 12A O.S.2011 § 1–103(a) is that "The Uniform Commercial Code shall be liberally construed and applied to promote its underlying purposes and policies, which are: (1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." This directive indicates that in this case it would be unreasonable and would place undue burdens on lenders to monitor situations that at best may possibly occur. These burdens are contrary to the purpose and scheme of the Uniform Commercial Code in promoting the ease of business transactions.

### III. CONCLUSION

¶ 18 The modified certified question presented by the United States Bankruptcy Court for the Western District of Oklahoma

---

vehicle, except those vehicles registered pursuant to Section 1120 of this title and trailers registered pursuant to Section 1133 of this title, previ-

ously titled by anyone in another state and engaged in interstate commerce, and except as provided in subsection M of this section...."

is answered with specific explanations relevant to the case at bar. Title may be properly issued by the Oklahoma Tax Commission to non-required trailers for the convenience of showing ownership. The use of title beyond this single purpose for non-required vehicles would be contrary to the general scheme and purposes of the Uniform Commercial Code as adopted in Oklahoma. The proper method for perfecting a security interest in collateral that is not required to be titled (but may be titled at the discretion of the owner) still is, and has been by the filing of a UCC–1 financing statement.

**QUESTION REFORMULATED
AND ANSWERED.**

CONCUR: TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, EDMONDSON, REIF, COMBS, JJ.

CONCUR IN RESULT: KAUGER, GURICH, JJ.

CONCURS IN PART; DISSENTS IN PART: WATT, J.