2015 OK CIV APP 33

June CLABAUGH, Plaintiff/Appellee,

v.

Jerry GRANT, Defendant/Third–
Party Plaintiff/Appellant,

v.

First American Bank & Trust, Third–
Party Defendant/Appellee.

No. 111,292.

Court of Civil Appeals of Oklahoma,
Division No. 3.

June 20, 2014.

Rehearing Denied Aug. 8, 2014.

Certiorari Denied March 30, 2015.

⬉202

Jack Tracy, Purcell, Oklahoma, for Plaintiff/Appellee.

Randall K. Calvert, Rabindranath Ramana, Denielle Williams, Calvert Law Firm, Oklahoma City, Oklahoma, for Defendant/Third–Party Plaintiff/Appellant.

Chris Condren, Kari Y. Hawkins, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Third–Party Defendant/Appellee.

ROBERT D. BELL, PRESIDING JUDGE.

¶ 1 Defendant/Third–Party Plaintiff/Appellant, Jerry Grant, appeals from the trial court's judgment rendered on a jury verdict in favor of Plaintiff/Appellee, June Clabaugh, in this action for conversion and fraud. For the reasons set forth below, we affirm in part and reverse in part.

¶ 2 On January 27, 2005, Plaintiff entered into a rental agreement for a safety deposit box with Third–Party Defendant/Appellee, First American Bank & Trust (Bank). Plaintiff and her daughter, Alicia Nelson, placed in safety deposit box # 267 her deceased father's large coin collection, along with a variety of jewelry and other family heirlooms. Included in the box was an old prescription bottle filled with coins. The bottle's

prescription label from Turner's Pharmacy in Purcell bore the name "Ar. Jones." Plaintiff's deceased mother's name was Artibus Jones. Plaintiff testified the five inch by five inch safety deposit box was completely full and weighed between 30 and 40 pounds. Plaintiff timely paid her rent on the box every year thereafter and did not seek to reenter the box until 2010. Trial testimony from Plaintiff's expert witness placed the value of the coin collection at between one and two million dollars.

¶ 3 In April 2008, Bank accidentally expunged Plaintiff's safety deposit records from its computer system (although a Bank officer later conceded there were other records available to identify the owner of box # 267). Purportedly believing it was holding an abandoned safety deposit box, Bank employees opened and physically examined the contents of box # 267 in the fall of 2009 in an effort to identify the owner. The only item in the box that contained any distinguishing information was the prescription pill bottle with the name "Ar. Jones."

¶ 4 When Bank discovered records indicating an "Arley Jones" was a former account holder, it sought to determine whether that Arley Jones was the same person as the "Ar. Jones" listed on the pill bottle. Bank records revealed Arley Jones' account had been closed years earlier by Defendant, his nephew. Bank contacted Defendant, who confirmed he was the personal representative of Arley Jones' estate. Testimony conflicted as to whether Defendant informed Bank he had been discharged as the personal representative of his uncle's estate in late 2006. At Bank's request, Defendant produced the Letters of Administration appointing him as the estate's personal representative in May 2006. On October 29, 2009, Bank drafted and had Defendant execute a hold harmless agreement. Defendant signed the document as "Personal Representative" of the estate of Arley Austin Jones. Bank thereafter delivered the contents of Plaintiff's safety deposit box to Defendant, who claims he sold most of the contents to a coin dealer a few days later for $488.00. Defendant admitted he was not the heir of his uncle's estate, he did not have approval from the sole heir to sell the property, and he did not contact the sole heir to disclose the transaction or remit to her the $488.00.

¶ 5 When Plaintiff's daughter sought access to her safety deposit box the following year, Bank revealed it had mistakenly released the contents to an unnamed man. Bank contacted Defendant, who disclosed he had disposed of the box contents. Plaintiff then sued Bank and several "Doe" defendants for conversion, gross negligence, fraud and emotional distress. She later substituted Defendant as "Doe # 1" after learning his identity. Defendant filed a counter-claim against Plaintiff for defamation (later abandoned) and a cross-claim against Bank for negligence and malfeasance. Plaintiff dismissed her claims against Bank after entering into a confidential settlement agreement. The pre-trial order listed Plaintiff's causes of action against Defendant as fraud, conversion and punitive damages. Defendant's claim against Bank was listed as negligence. Bank's pre-trial motion for summary judgment was overruled.

¶ 6 A jury trial was conducted from April 30 to May 3, 2012. At the close of evidence, Bank moved for a directed verdict/motion to dismiss Defendant's cross-claim. The trial court granted the motion, finding Bank owed no duty to Defendant. Plaintiff's claims against Defendant were submitted to the jury, which returned a verdict finding:

1. By a preponderance of the evidence, Defendant "converted some or all of Plaintiff's property to his own use";

2. By clear and convincing evidence, Defendant "committed fraud against" Plaintiff; and

3. By clear and convincing evidence, Defendant "acted in reckless disregard of the rights of" Plaintiff.

The jury awarded Plaintiff $1,250,000.00 in actual damages and, after a separate proceeding, $125,000.00 in punitive damages. The trial judge entered judgment to that effect. Defendant's motions for judgment notwithstanding the verdict, new trial and for an offset of the Bank settlement proceeds

were denied. From said judgment, Defendant appeals.[1]

▮ ¶7 We first address Defendant's claim that the trial court erroneously dismissed his negligence cross-claim against Bank. The elements of negligence are "(1) the existence of a duty on part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting · therefrom." *Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41, ¶ 7, 725 P.2d 300. Under this standard, we must initially decide the threshold question of whether Bank owed a duty to protect Defendant from injury, because there can be no actionable negligence in the absence of a duty. *Iglehart v. Board of County Comm'rs of Rogers County*, 2002 OK 76, ¶ 10, 60 P.3d 497; *Nicholson v. Tacker*, 1973 OK 75, ¶ 11, 512 P.2d 156. "Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." *Id.* "The question of whether a duty is owed by a defendant is one of law; ..." *Iglehart* at ¶ 11.

▮ ¶ 8 Bank argued at trial it owed no duty to Defendant because he was not a customer. However, as Defendant correctly notes, "liability in negligence is not necessarily dependent upon a pre-existing privity in legal relationship between the person injured and the person causing the injury." *Independent–Eastern Torpedo Co. v. Price*, 1953 OK 74, ¶ 42, 208 Okla. 633, 258 P.2d 189. As the *Iglehart* Court detailed:

> We recognize the traditional common-law rule that whenever one person is by circumstances placed in such a position with regard to another, that, if he (she) did not use ordinary care and skill in his (her) own conduct, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger. Among a number of factors used to determine the existence of a duty of care, the most important consideration is foreseeability. Generally a "de-

fendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." Foreseeability establishes a "zone of risk," which is to say that it forms a basis for assessing whether the conduct "creates a generalized and foreseeable risk of harming others."

*Iglehart*, 2002 OK 76 at ¶ 10, 60 P.3d 497 (emphasis and footnotes omitted). *See also Union Bank of Tucson, Ariz. v. Griffin*, 1989 OK 47, ¶ 13, 771 P.2d 219, which held, "The law imposes upon a person engaged in the prosecution of any work an obligation to use ordinary care to perform it in such a manner as not to endanger the property of others."

▮ ¶ 9 In the present case, Defendant argues Bank had a duty to exercise ordinary care in dealing with him and Bank breached that duty. Specifically, Defendant asserts it was reasonably foreseeable Plaintiff would some day return to Bank to claim her property after Defendant had disposed of it, Plaintiff would then sue Defendant, and Defendant would incur damages as a result. Defendant also contends his injury was caused predominantly by Bank's negligent acts—losing records, extrapolating from a name on a pill bottle that Arley Jones owned the property at issue, and misdelivering Plaintiff's property—and not by his later disposition of the property. In any event, Defendant urges the issue of whether his act of selling the coins constituted a foreseeable supervening event is a fact question for a jury.

¶ 10 As the *Iglehart* Court specifically noted, duty "is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.*, 2002 OK 76 at ¶ 10, n. 17, 60 P.3d 497, *quoting* PROSSER, LAW ON TORTS, pp. 332–3 (3d ed.1964) and *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976). The instant record reveals Defendant obtained

---

1. During the pendency of this appeal, Defendant filed with this Court a Motion for Expedited Ruling seeking an appellate decision before Defendant's real property was sold at sheriff's sale. Said motion was rendered moot by the trial court's issuance of a stay of execution proceedings on January 17, 2014.

the safety deposit box contents, not in his individual capacity, but *as the personal representative of his uncle's estate.* In fact, Defendant had been discharged as personal representative on December 29, 2006, and thereafter had no lawful right to act on behalf of his uncle's estate. The court order discharging Defendant as personal representative also specifically stated that all after-discovered property belonging to his uncle is exclusively vested in the uncle's sole heir. Regardless of Defendant's claims that he later attempted to locate the sole heir so he could give her the sale proceeds, Defendant *had no authority* to obtain the subject property nor sell the same.

¶ 11 In *White v. Shawnee Mill. Co.,* 1923 OK 1057, 94 Okla. 260, 221 P. 1029, 1031, the Court held:

> The rule is well settled that, if a party suffers injury while violating a public law, the other party being also a transgressor, he cannot recover for the injury if the unlawful act was the cause of the injury.

*White,* 1923 OK 1057 at ¶ 3, 94 Okla. 260, 221 P. 1029 (citations omitted). *Accord Panther v. McKnight,* 1926 OK 937, ¶ 8, 125 Okla. 134, 256 P. 916. This rule is akin to the *in pari delicto* doctrine, "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." BLACK'S LAW DICTIONARY 806 (8th ed.2004). *See also Bowlan v. Lunsford,* 1936 OK 158, ¶ 13, 176 Okla. 115, 54 P.2d 666 (party to illegal act may not take advantage of party *in pari delicto* for damages sustained thereby).

¶ 12 Bank was arguably negligent vis-a-vis Defendant in transferring Plaintiff's property to him without conducting more thorough due diligence. However, Defendant took possession of the property and disposed of it without any legal authority to do so. Under these circumstances and in light of the above stated principles of law, we cannot say Defendant is entitled to protection from Bank's acts. Thus, we hold the trial court did not err in holding Bank owed no legally protect-

ed duty to Defendant. The dismissal of Defendant's cross-claim is therefore affirmed.

 ¶ 13 We next find merit in Defendant's proposition that he is entitled to judgment notwithstanding the verdict on Plaintiff's fraud claim.

The standard for determining a motion for judgment notwithstanding the verdict (JNOV) is identical to the standard for determining a motion for directed verdict. We review a trial court's ruling on a motion for JNOV by the same standard used by the trial court. We consider as true all evidence favorable to the non-moving party together with all inferences that may be reasonably drawn therefrom, and we disregard all conflicting evidence favorable to the moving party. A motion for JNOV should not be granted unless there is an entire absence of proof on a material issue. *First Nat. Bank in Durant v. Honey Creek Entm't Corp.,* 2002 OK 11, ¶ 8, 54 P.3d 100 (citations omitted).

 ¶ 14 The elements of actionable fraud are:

> 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment.

*Bowman v. Presley,* 2009 OK 48, ¶ 13, 212 P.3d 1210. For purposes of the instant JNOV, we must consider as true Plaintiff's allegations that Defendant intentionally or recklessly led Bank to believe he was still the personal representative of his uncle's estate when he obtained Plaintiff's property and he did so with the intention that Bank act upon such belief. However, the record is devoid of any allegation or evidence *Plaintiff* relied upon Defendant's alleged deceit to her own detriment.[2] Defendant made no representations whatsoever to Plaintiff and Plaintiff knew nothing of Defendant's representations to Bank at the time her property was misappropriated. Plaintiff did not and cannot

---

**2.** The trial court did not submit OUJI No. 18.1 to the jury. The instructions given by the court did not contain any requirement that Plaintiff must

have detrimentally relied on Defendant's misrepresentations.

prove Defendant committed any act of fraud *against her.* The trial court's decision overruling Defendant's fraud JNOV is reversed.

¶ 15 Defendant also contends the trial court erred in overruling his JNOV motion regarding Plaintiff's conversion claim. Conversion is defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Welty v. Martinaire of Okla., Inc.,* 1994 OK 10, ¶ 6, 867 P.2d 1273. As stated above, in reviewing a JNOV motion this Court must consider as true all evidence favorable to Plaintiff and disregard all Defendant's conflicting evidence. *Honey Creek,* 2002 OK 11 at ¶ 8, 54 P.3d 100. Applying these rules to the instant case, this Court must take as true the coin collection in Plaintiff's safety deposit box had a value of between one and two million dollars. We must also consider as true all of Plaintiff's evidence that indicated Defendant wrongfully exerted control over Plaintiff's property. Conversely, we are required to disregard, among other things, Defendant's claims that he received only $488.00 for the sale of Plaintiff's property. Under these circumstances, we hold the trial court properly denied Defendant's conversion JNOV motion.

¶ 16 In reaching the above conclusion, we specifically reject Defendant's arguments that (1) Plaintiff was required to prove which particular items Defendant received from Bank and (2) Defendant was merely an innocent bailee or discoverer of lost property. With respect to the items of property received by Defendant, Bank's officer testified it delivered *all* of the contents of safety deposit box # 267 to Defendant. Plaintiff, her daughter and her cousin all testified as to the extensive coin collection inherited by Plaintiff, and Plaintiff and her daughter testified regarding the coins, jewelry and other valuables they placed in the safety deposit box. Plaintiff's expert testified regarding the value of the coin collection. The issues of what items Defendant received and the value of those items were properly submitted to the jury for their determination.

¶ 17 We reject Defendant's second argument outright. Defendant was not an innocent bailee or discoverer of lost property.

Plaintiff's property was never lost. Defendant took possession of Plaintiff's property from Bank in his purported capacity as personal representative of his uncle's estate at a time when he had no lawful authority to do so. Viewing the evidence in the light most favorable to Plaintiff, the jury could properly conclude Defendant then converted such property to his own use and in denial of Plaintiff's rights therein.

¶ 18 Defendant next maintains he is entitled to a new trial because the jury was improperly instructed regarding Plaintiff's conversion claim. We disagree. First, we note Defendant did not object to the instructions given by the trial court. "As a general rule, a party who makes no objection to the instructions of the court to the jury waives any error therein." *In re A.A.C.P.,* 2006 OK CIV APP 32, ¶ 22, 132 P.3d 644, *citing Hawkins v. McElhanon,* 1957 OK 187, ¶ 2, 315 P.2d 667. Under such circumstances, this Court will review only for fundamental error appearing on the face of the instructions. *Sullivan v. Forty–Second West Corp.,* 1998 OK 48, ¶ 9, 961 P.2d 801.

¶ 19 "[A]n affirmative duty is placed upon the trial court to give instructions which accurately reflect the law regarding the issues presented." *Id.* at ¶ 12 (quotation omitted).

In reviewing the propriety of given instructions, the instructions are to be viewed in whole rather than separately. And, where it appears that instructions taken as a whole do not establish that the jury was misled or that complaining parties' rights were prejudiced, the verdict will not be set aside. Instructions are sufficient when, considered as a whole, they present the law that is applicable to the issues.

*CNA Ins. Co. v. Krueger, Inc., of Tulsa,* 1997 OK 142, ¶ 15, 949 P.2d 676, 679 (citation omitted).

¶ 20 We have examined the face of the jury instructions in the present case and find no erroneous statement of fundamental law. The jury was adequately instructed regard-

ing Plaintiff's conversion claim.[3] Accordingly, this proposition of error is rejected.

■ ¶ 21 Next, Defendant claims the jury's award is excessive, not supported by the evidence and warrants a remittitur. Initially, we note it is impossible to attribute the jury's compensatory damage award to either Plaintiff's fraud claim, which is herein reversed, or her conversion claim. However, it is clear both causes of action sought a singular damage award for Defendant's misappropriation of Plaintiff's property. The jury's punitive damages award was based upon Defendant's reckless disregard for Plaintiff's rights, see 23 O.S.2011 §9.1; OUJI No. 5.6, via his unauthorized taking and disposal of Plaintiff's property. Thus, under the facts of this case, we hold the damage award is unaffected by the reversal of Plaintiff's fraud verdict.

¶ 22 In *Currens v. Hampton*, 1997 OK 58, 939 P.2d 1138, the Court reiterated:

> We have traditionally held that an appellate court has no right to place a limitation on the amount of a jury verdict unless it is convinced that the amount bears no relation whatsoever to the evidence. The established rule is that before a verdict of a jury may be set aside as excessive, it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous, showing the jury to have been actuated by passion, partiality, prejudice or corruption.... An appellate court may not substitute its judgment for that of the jury in its exercise as a fact-finding body; it must consider the evidence most favorable to the plaintiffs as establishing the facts concerning the excessiveness of the verdict.

*Currens*, 1997 OK 58 at ¶ 10, 939 P.2d 1138 (citations omitted).

■ ¶ 23 Upon review of the instant record, we cannot say the jury's award is excessive. Considering the evidence in the light most favorable to Plaintiff, Defendant unlawfully absconded with between a one and two million dollar coin collection, jewelry and other heirlooms. Plaintiff's evidence established the coin collection contained approximately 55 vintage, solid gold Double Eagle ($20.00) gold pieces, a number of extremely rare three-legged Buffalo nickels, hundreds of Morgan silver dollars (approximately 30 to 40 pounds of solid silver) and various other collectible coins. She testified the family heirlooms included two gold wedding rings and a pair of diamond earrings. Plaintiff's expert testified $488.00 would only buy ten ounces of junk silver. Because the evidence tends to support the jury's award, its verdict must be upheld.

■ ¶ 24 Finally, we address Defendant's assertion that the jury's award should be reduced by the amount of Plaintiff's settlement with Bank. Defendant's argument is based upon the common law "one satisfaction" rule designed to prevent a plaintiff from gaining double recovery. *See Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶¶ 12–13, 920 P.2d 122. However, 12 O.S.2011 § 832(C) states "[t]here is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to [the plaintiff's] injury...." In the present case, Defendant intentionally converted Plaintiff's property to his own use. He is not entitled to any set-off based upon Bank's settlement with Plaintiff. The judgment of the trial court is affirmed in part and reversed in part.

¶ 25 AFFIRMED IN PART; REVERSED IN PART.

MITCHELL, J., and GOREE, J., concur.

---

3. Having already decided Plaintiff's fraud verdict against Defendant must be overturned, we need not determine whether the trial court's fraud instructions were sufficient.