BROWN v. MULDROW PUBLIC SCHOOLS
2024 OK CIV APP 20
Case Number: 120934
Decided: 07/17/2024
Mandate Issued: 08/09/2024
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2024 OK CIV APP 20, __ P.3d __

 

GEORGE CHRISTOPHER BROWN, Plaintiff/Appellee,
v.
MULDROW PUBLIC SCHOOLS, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
SEQUOYAH COUNTY, OKLAHOMA

HONORABLE JEFFREY J. PAYTON, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART

Jeffrey L. Edwards, FLYNN, EDWARDS & O'NEAL, PLLC, Roland, Oklahoma, and
Michael M. Blue, BLUE LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellee,

Frederick J. Hegenbart, Adam S. Breiphol, ROSENSTEIN, FIST & RINGOLD, Tulsa, Oklahoma, for Defendant/Appellant.

THOMAS E. PRINCE, JUDGE:

¶1 Defendant/Appellant, Muldrow Public Schools ("the School District") has appealed the Journal Entry of Judgment which followed a jury's verdict and resulted in an award to Plaintiff/Appellee, George Christopher Brown of $125,000.00 in damages and an additional $16,061.74 in costs. The School District alleged error concerning the trial court's (1) denial of its Motion for a Directed Verdict; (2) denial of three requested jury instructions; and (3) computation and award of damages, fees, and costs. We find the trial court properly denied both the School District's Directed Verdict and requested jury instructions at issue. We also find that, while the trial court award of damages in the amount of $125,000.00 was correct, the trial court erred in its award of expert costs to Brown in excess of the $125,000.00 damages. We, thus, affirm the trial court's judgment in part and vacate in part.

BACKGROUND

¶2 George Brown commenced this action following an assault while a student at Muldrow High School on September 29, 2016. Prior to the assault, Brown was the subject of repeated bullying and verbal harassment by another student, B.B. Brown alleged he had reported the incidents on multiple occasions, both to his teacher, Leona Gann, and the Principal of Muldrow High School, Steven Page. Brown alleged that, despite both his and his parents' efforts to seek help from Principal Page to put an end to the bullying, no action was taken to stop B.B.'s recurring behavior. The School District maintained, however, that Principal Page met with B.B. on one occasion to discuss the reported bullying before the September 29th altercation between the two students and that Principal Page specifically directed B.B. to stop contact with Brown. The School District further contended that Principal Page did not consider any prior incidents between Brown and B.B. to amount to "bullying," but Brown, his parents, and Mrs. Gann all testified to the obvious emotional toll the repeated harassment had taken on Brown.

¶3 In the week leading up to the September 29, 2016 altercation, Brown and B.B. had several verbal altercations between one another and their respective groups of friends. One of the verbal altercations occurred on or about September 22, 2016, in a common area outside the high school building, during which Muldrow High School Teacher, Julie Boshers, verbally de-escalated the situation. Of note, Julie Boshers was not only a teacher at the high school, but was also B.B.'s mother. Boshers proceeded to take both students to Principal Page's office, where both students received disciplinary action, were instructed to leave each other alone, and told to inform Principal Page of any further incidents. Following the September 22nd verbal altercation, but prior to the September 29th physical altercation, Brown was told by other students that B.B. was telling others he was going to beat up Brown, so Brown, again, reported the specific threat to Principal Page. Another teacher, Lori Likens, testified after-the-fact that a "conflict between [B.B.] and Brown had been brewing for weeks." On the morning of the September 29th physical altercation, Principal Page spoke with Boshers to determine whether issues had persisted between Brown and B.B., which Boshers confirmed remained ongoing.

¶4 According to Brown's Petition, on September 29, 2016, during the students' lunch period, B.B. challenged Brown to a fight on the Muldrow High School grounds, but Brown later described in his deposition that he approached B.B. and told him to "meet [Brown] at the park so [they] can finally make everything stop." Boshers was on "relief duty" during the lunch period with another teacher where the two were responsible for monitoring the students outside the school gymnasium. After allegedly leaving his belongings with Boshers, B.B. proceeded to walk up to Brown and immediately punched Brown in the chin. In both his deposition and trial testimony, Brown recounted blacking out and waking up to find B.B. holding him in a headlock punching him in the forehead, after which B.B. flipped Brown upside-down, tossed him headfirst onto the concrete and threw one final punch into the back of Brown's head.

¶5 Brown's description of the events were further corroborated by video footage taken by a bystander which was included in the record. The physical altercation concluded when another minor student, E.R., separated Brown and B.B. Notably, the video footage also appears to depict Boshers standing stationary in the background through the majority of B.B.'s physical assault upon Brown, making no efforts to intervene until, as she claimed, she directed E.R. "to break it up." B.B. and Brown were subsequently brought to Principal Page's office, where B.B. received a citation for instigating the physical altercation and was suspended. Brown also testified to the fact he received no medical attention following the physical altercation, despite suffering trauma to his head, neck, and spine during the course of the assault.

¶6 Several months after the physical altercation, Brown began treatment for both the physical and mental aftermath of the altercation, including medical treatment for broad based disc bulges and trauma to his neck, back, and shoulders, in addition to psychological treatment for depression, severe anxiety, and stress. After filing the requisite Notice of Tort Claim to the Muldrow Board of Education on September 19, 2017, Brown filed suit against the School District and teacher, Julie Boshers, in her individual capacity on June 19, 2018. Brown asserted three negligence-based causes of action against the School District and Boshers, which included claims for negligence, negligent supervision and training (against the School District only), and negligence per se, in addition to a claim for intentional infliction of emotional distress. Brown filed an Amended Petition on July 2, 2018.

¶7 On May 28, 2021, the School District filed a Motion for Summary Judgment. The School District claimed it was entitled to summary judgment on all three negligence claims because they were based on attempts to hold the School District liable for (1) conduct by Boshers which was outside the scope of employment; (2) conduct by other School District employees which was not the proximate cause of Plaintiff's injury; and (3) an injury which was caused by the supervening act of a third party. The School District further argued that the GTCA barred Brown's claims for intentional infliction of emotional distress, negligent supervision, and punitive damages, in addition to arguing that Brown's negligence per se claim failed to state a claim upon which relief could be granted. On August 27, 2021, following a hearing, the trial court granted the School District's Motion (in part) as to Brown's claims for negligence per se, intentional infliction of emotional distress, and punitive damages. The trial court denied the School District's Motion as to Brown's claims for negligence and negligent supervision.

¶8 Brown's remaining claims against both the School District and Boshers for negligence and negligent supervision were scheduled for a jury trial on April 26, 2022. Prior to the trial, Brown reached a $45,000 settlement agreement with Boshers which was formally memorialized on April 4, 2022. In the School District's Trial Brief and Motion for Entry of Judgment and/or Dismiss, the School District alleged the language of the settlement agreement not only released Boshers from tort liability, but also released the School District from liability arising out of Boshers' conduct while in the scope of her employment with the School District.

¶9 On April 25, 2022, the trial court held a hearing on the School District's Motion for Entry of Judgment and/or Dismiss, where the trial court ruled that all claims against the School District based on vicarious liability for Boshers' conduct had been settled and, thereby, released. The trial court additionally found, however, that Brown's remaining causes of action against the School District which involved the actions of other School District employees had not been released through the settlement agreement and should proceed to trial.

¶10 The jury trial commenced the following day (on April 26, 2022) and went on until April 29, 2022. The School District's primary argument at trial concerned the causation of Brown's injuries, largely focused on the fact that the School District could not be held liable for B.B.'s allegedly "unforeseeable" assault of Brown, nor could it be held liable for Boshers' negligent conduct which fell outside the scope of her employment with the School District. The School District maintained that, beyond Boshers, all other School District employees operated in accordance with the School District's policies and training about bullying and harassment. Brown contended, however, that the negligence of School District employees other than Boshers contributed to Brown's resulting injuries, citing to the numerous failures by School District employees to take adequate action to investigate and quell the persistent bullying and harassment. Brown contended he had met with Principal Page on at least three occasions to report the bullying and harassment, including informing Principal Page that B.B. had specifically threatened to beat up Brown in the days leading up to the September 29th physical assault. Brown's contention was supported by testimony of both his teacher, Mrs. Gann, and his parents, all of whom testified to their many attempts to contact Principal Page and Superintendent Flanagan so to bring an end to the bullying. Trial testimony revealed that, despite B.B. having had a history of bullying offenses documented in his disciplinary record, Principal Page took few, if any, remedial measures to address Brown's reports of B.B.'s bullying and harassment. Brown also testified to the aftermath of the physical assault, citing to the chronic neck and back pain that he continued to suffer from through the years following the assault, which have impeded his ability to maintain consistent employment. Brown also attested to the psychological toll the assault had taken on him, noting the severe PTSD and anxiety he has endured for years.

¶11 After Brown rested his case, the School District moved for a directed verdict where it re-urged all the arguments raised in its MSJ, which was denied. The School District renewed its motion after resting its own case, re-urging the same arguments, which the trial court, once again, denied. When discussing both parties' proposed jury instructions on the final day of trial, School District requested jury instructions on the issues of intervening cause and several affirmative defenses under the GTCA, which were denied. The jury deliberated and, ultimately, returned with a verdict of $312,600.00 against the School District, which was reduced to $177,119.16 (56.66%) based on the comparative negligence of Boshers (30.00%), B.B. (7.50%), and Brown (5.84%).

¶12 The School District and Brown disagreed on several issues with regard to the calculation of damages, as well as the trial court's award of attorney's fees and expert costs, so the trial court conducted a hearing on post-trial motions on September 12, 2022. First, the parties disagreed as to the order in which the remittitur to the $125,000.00 liability limit provided under the GTCA and the offset under Uniform Contribution Among Tortfeasors Act (UCATA) should be applied. The School District maintained that the trial court should have first applied the GTCA remittitur to reduce the jury's award of damages from $312,600.00 to the $125,000.00 GTCA cap provided in 51 O.S. § 154

¶13 The School District has timely appealed the Journal Entry of Judgment, asserting error with regard to the trial court's (1) denial of the School District's Motion for a Directed Verdict; (2) denial of three requested jury instructions; and (3) award of damages and costs. Brown also filed a timely counter appeal, alleging error on the single issue of the trial court's denial of Brown's request for attorney's fees.

STANDARD OF REVIEW

¶14 Appellate courts accord great weight to jury verdicts, and we will not set aside a jury verdict unless it is "beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." Death of Lofton v. Green, 1995 OK 109905 P.2d 790Park v. Security Bank & Trust, 1973 OK 72512 P.2d 113Stroud v. Arthur Andersen & Co., 2001 OK 7637 P.3d 783

¶15 The School District has alleged error first with regard to the trial court's denial of its Motion for a Directed Verdict, which we review de novo. Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50510 P.3d 845de novo review, "this Court possesses plenary, independent, and non-deferential authority to examine the issues presented." Benedetti v. Cimarex Energy Co., 2018 OK 21415 P.3d 43Gillham v. Lake Country Raceway, 2001 OK 4124 P.3d 858Id.

¶16 The School District has also alleged error regarding the trial courts denial of three requested jury instructions. When reviewing contested jury instructions, we consider "the accuracy of the statement of law, the applicability of the instructions to the issues when the instructions are considered as a whole, and above all, whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction." Cimarron Feeders, Inc., v. Tri-County Elec. Coop., Inc., 1991 OK 104818 P.2d 901Myers v. Missouri Pacific R. Co., 2002 OK 6052 P.3d 1014see also 12 O.S. 2011 § 3001.1

¶17 Finally, both the School District and Brown alleged error concerning the trial court's calculation of damages and award of costs and fees. While each allegation of error concerning the award of costs and damages deal with different components of Brown's ultimate award of damages, all three sub-issues deal with statutory interpretation. Our review of legal questions involving statutory interpretation are also subject to de novo appellate review. Fulsom v. Fulsom, 2003 OK 9681 P.3d 652Samman v. Multiple Injury Trust Fund, 2001 OK 7133 P.3d 302Wylie v. Chesser, 2007 OK 81173 P.3d 64

ANALYSIS

¶18 The School District, as the initial appealing party, asserted fifteen issues51 O.S. § 15512 O.S. § 832

¶19 Based on our comprehensive review of the record and relevant law, we find no error in the trial court's denial of the School District's Motion for a Directed Verdict, as the trial court properly determined issues of fact remained in dispute necessitating jury consideration. We further find no error in the trial court's denial of the three requested jury instructions at issue. Finally, we find that, while the trial court's award of damages in the amount of $125,000.00 was proper, the trial court erred by awarding Brown the additional $16,061.74 in costs, as the School District's tort liability cannot exceed the GTCA cap. Accordingly, the underlying judgment awarding Brown $125,000.00 in damages for the School District's negligence is affirmed, but the trial court's additional award of costs in the amount of $16,061.74 is vacated.

A. Whether the trial court erred in denying School District's Motion for Directed Verdict.

¶20 The School District moved for a Directed Verdict after Brown rested, and later renewed its Motion upon resting its own case, both of which the trial court denied. The School District contended it was entitled to a Directed Verdict based upon the purported lack of evidence of the School District's negligence and Brown's settlement of his claim against Boshers prior to the trial. More specifically, the School District sought a Directed Verdict on three issues (which were also raised in the School District's Motion for Summary Judgment), including: (1) that the physical altercation and Brown's resulting injuries were unforeseeable to the school district; (2) that B.B.'s conduct was an intervening/supervening cause of Brown's injury; and (3) that Boshers' actions, which the School District alleged did not fall within the scope of her employment, were the proximate cause of Brown's injuries. As a preliminary matter, we note that all three of the preceding issues relate to causation. It is well established that issues of causation usually present a question of fact necessitating jury resolution, lending credence to the trial court's denial of the School District's Motion for a Directed Verdict. Jackson v. Jones, 1995 OK 131907 P.2d 1067

¶21 A directed verdict "is a mechanism by which the judge controls the jury by taking the case out of the jurors' hands, and acts somewhat like a delayed summary judgment motion in that it determines that there are no genuine issues of fact that need to be sent to the jury." Cook v. Bishop, 1988 OK 120764 P.2d 189Estrada v. Port City Properties, Inc., 2007 OK CIV APP 23158 P.3d 495Harder v. F.C. Clinton, Inc., 1997 OK 137948 P.2d 298

1. Foreseeability of the Physical Altercation & Brown's Resulting Injuries

¶22 As stated above, a directed verdict is only proper where the party opposing the motion failed to demonstrate a prima facie case for recovery. Gillham v. Lake Country Raceway, 2001 OK 4124 P.3d 858Franklin v. Toal, 2000 OK 7919 P.3d 834Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 2002 OK 7660 P.3d 497Brewer v. Murray, 2012 OK CIV APP 109292 P.3d 41

¶23 In a similar vein, a claim for negligent supervision and training requires a showing that an employer met the three, preceding elements of negligence during the "hiring, supervising, or retaining" of an employee. Le v. Total Quality Logistics, LLC, 2018 OK CIV APP 71431 P.3d 366N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88998 P.2d 592. Schovanec v. Archdiocese of Oklahoma City, 2008 OK 70188 P.3d 158

¶24 The School District argued both at the trial level and on appeal that Brown failed to demonstrate that B.B.'s assault upon Brown was foreseeable to the school administration, maintaining that "[a]t no point during these proceedings was there any evidence that any employee of the School District other than Boshers, who was acting in bad faith and outside the scope of employment, knew or had reason to know of a threat to the safety of Brown before the altercation with B.B." We disagree with the School District's portrayal of the evidence, as the record supports Brown's contention that multiple employees of the School District beyond Boshers were aware of B.B.'s persistent bullying of Brown. This evidence includes the repeated attempts by Brown, his parents, and his teacher, Mrs. Gann, to report B.B.'s persistent bullying of Brown and B.B.'s clear threats of violence to both Principal Page and Superintendent Flanagan. In addition, according to Principal Page's deposition, B.B.'s disciplinary record noted multiple incidents of harassment and bullying which were formally documented by school administration prior to B.B.'s September 29th physical assault of Brown, further contributing to the foreseeability of B.B.'s conduct.

¶25 We find that Brown provided sufficient evidence to preclude the School District's Motion for a Directed Verdict on the issue of foreseeability. Whether a negligent event's injurious consequences could have been reasonably foreseen presented a jury question, and the trial court appropriately left this issue to be decided by the jury. Lockhart v. Loosen, 1997 OK 103943 P.2d 1074

2. B.B.'s Conduct as an Intervening/Supervening Cause of Brown's Injury

¶26 In moving for a Directed Verdict, the School District specifically argued it could not be held liable for Brown's injuries because B.B.'s "sudden and unprovoked intentional act" constitutes a supervening cause which broke the causal chain between any alleged negligence by the School District and Brown's resulting injuries. For an intervenor's act to become a "supervening cause" which interrupts the causal chain and cuts off possible liability for the original negligence, the act must: (1) be independent of the primary negligence; (2) be adequate of itself to bring about the injury complained of; and (3) not be a reasonably foreseeable event. Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997). Notably, if a supervening cause was reasonably foreseeable or should have otherwise been anticipated, then the original, negligent act remains the proximate cause of the injury. Worsham v. Nix, 2004 OK CIV APP 283 P.3d 879Runyon v. Reid, 1973 OK 25510 P.2d 943Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997).

¶27 Because the foreseeability of an intervening force is dispositive in determining whether the intervenor's act became the "supervening cause" in a negligence action, resolution of this factual dispute necessitated evaluation by the jury. Accordingly, we find no error in the trial court's denial of the School District's Motion for a Directed Verdict with regard to B.B.'s conduct serving as a supervening cause, as the foreseeability of B.B.'s conduct remained in controversy.

3. Proximate Cause of Brown's Injury

¶28 In a GTCA action, a government entity can only be held liable for an employee's tortious conduct when the employee was acting within the scope of his or her employment. 52 O.S. 153(A). An employee's "scope of employment" is defined as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority." Speight v. Presley, 2008 OK 99203 P.3d 17351 O.S. § 152

The School District argued that Boshers' actions -- both leading up to and during the physical altercation between B.B. and Brown -- were not consistent with the "good faith performance of her duties as a teacher," which placed her conduct outside the scope of her employment and, therefore, exempted the School District from liability resulting from Boshers' negligent conduct. This argument, however, overlooked Brown's claims of negligent conduct of other School District employees and administrators who Brown alleged failed to take adequate action to investigate and respond to Brown's reports of B.B.'s persistent bullying and harassment. Specifically, Brown attested to informing his teacher, Mrs. Gann, of B.B.'s bullying, in addition to reporting B.B.'s conduct directly to Principal Page on multiple occasions. Brown's parents also testified to their repeated attempts to contact both Principal Page and Superintendent Flanagan, after which Brown's parents attested to feeling like both Principal Page and Superintendent Flanagan "just didn't care" about the bullying Brown was suffering.

¶29 Although the School District insisted Boshers' negligent conduct was the sole, proximate cause of Brown's resulting injuries, we find that facts relating to causation remained in controversy which warranted jury consideration. A tortious event's proximate cause is what sets in motion the chain of circumstances leading to the injury, but an event's proximate cause is not limited to a singular, causal entity. Thur v. Dunkley, 1970 OK 157474 P.2d 403Green v. Sellers, 1966 OK 65413 P.2d 522City of Okmulgee v. Hemphill, 1938 OK 474183 Okla. 45083 P.2d 189

¶30 When the School District moved for a directed verdict, questions of fact remained disputed concerning the causal role of Principal Page and Superintendent Flanagan's alleged negligence, both with regard to their alleged lack of proactive steps once on notice of B.B.'s bullying of Brown, in addition to the School District's negligent enforcement of its anti-bullying policy. Whether two causes are concurrent or whether one cause merely creates a condition for the second cause presents a question of fact and, "[u]nless the facts are undisputed and point inexorably to one conclusion, that determination is not properly made by the trial court on a demurrer to the evidence." Robinson v. Oklahoma Nephrology Associates, Inc., 2007 OK 2154 P.3d 1250Fargo v. Hays-Kuehn, 2015 OK 56352 P.3d 1223

B. Whether the trial committed reversible error by denying the School District's requested jury instructions.

¶31 The School District has further argued on appeal that the trial court committed reversible error by denying the School District's request for jury instructions on three, individual issues: (1) intervening cause; (2) exemptions from liability pursuant to 51 O.S. § 155Nail By and Through Nail v. Okla. Children's Mem'l Hosp., 1985 OK 101710 P.2d 755ABC Coating Co., Inc. v. J. Harris & Sons Ltd., 1986 OK 28747 P.2d 266City of Holdenville v. Griggs, 1966 OK 34411 P.2d 521

¶32 Brown has summarily argued the School District waived appellate review of all three of the jury instructions at issue by failing to make a formal objection as required by a strict reading of 12 O.S. § 578Cantrell v. Henthorn, 1981 OK 15624 P.2d 1056Id. We find that by requesting the jury instructions at issue on the record and engaging in oral arguments before the trial court, the School District informed the trial court of its objections, thus properly preserving its objections to the jury instructions on appeal.

¶33 Based on our review of the record, the three jury instructions at issue, and the resulting jury verdict, we find that the trial court's denial of the School District's requested jury instructions does not constitute reversible error, and that the trial court properly instructed the jury on all relevant issues presented at trial. It does not appear that the lack of instructions on intervening cause, GTCA § 155 exemptions, and punitive damages caused a "miscarriage of justice" or "led to a different verdict that would have been rendered but for the alleged error." Nail By and Through Nail v. Okla. Children's Mem'l Hosp., 1985 OK at ¶ 11, 710 P.2d at 759. Accordingly, we affirm the trial court's denial of the School District's requested instructions.

1. Jury Instructions on Intervening Cause

¶34 The School District has alleged on appeal that the trial court committed reversible error by denying the School District's requested jury instruction on intervening cause. Specifically, the School District contended that the trial court's failure to instruct the jury that it could find B.B.'s conduct broke the chain of causation between the School District's alleged negligence and Brown's resulting injury misled the jury which "very likely led to a different verdict than it would have rendered." We, however, find that the lack of instruction on intervening cause did not result in a "miscarriage of justice" or affect the jury verdict to the extent that a different verdict would have been rendered but for the exclusion of the instruction on intervening cause. The trial court's inclusion of jury instructions on the issues on "Direct Cause,

¶35 As stated above, the foreseeability of an "intervening cause" is integral to discerning the causal nexus of a negligent act. Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997). Thus, even in the case where an intervening actor contributed to the resulting injury, "the chain of causation extending from the original act to the injury is not broken by the independent intervening agency" where the intervening cause is foreseeable, and the original negligent act remains the proximate cause of the injury. Runyon v. Reid, 1973 OK 25510 P.2d 943

¶36 Upon receiving clear instruction on the role of foreseeability when making a finding of negligence, the jury concluded that B.B.'s conduct was foreseeable to the School District and served as a concurrent cause in Brown's resulting injuries. Thus, even had the jury received specific instruction on "intervening/supervening cause," the verdict would have remained the same, as the foreseeability of B.B.'s actions negated the School District's contention that B.B.'s assault of Brown broke the causal connection between the School District's negligence and Brown's injuries. Accordingly, the trial court's denial of the School District's requested instructions on intervening/supervening cause does not rise to the high bar of "reversible error."

2. Jury Instructions on Oklahoma GTCA Exemptions from Liability Under 51 O.S. § 155(4), (5), and (29)

¶37 The School District has further alleged that the trial court committed reversible error by denying School District's request for jury instructions on the 51 O.S. § 15551 O.S. § 15551 O.S. § 15551 O.S. § 155

¶38 The School District's first requested jury instruction dealt with the § 155(4) exemption from liability resulting from the "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." 51 O.S. § 155. J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty., 2021 OK CIV APP 34500 P.3d 649

¶39 The School District's second requested jury instruction dealt with the § 155(5) exemption from liability resulting from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." 51 O.S. § 155Nguyen v. State, 1990 OK 21788 P.2d 962State ex rel. Oklahoma Dep't of Pub. Safety v. Gurich, 2010 OK 56238 P.3d 1Nguyen v. State, 1990 OK 21788 P.2d 962Randell v. Tulsa Indep. Sch. Dist. No. 1, 1994 OK CIV APP 156889 P.2d 1264

¶40 The School District's third and final requested jury instruction dealt with the § 155(29) exemption from liability resulting from "any claim based upon an act or omission of an employee in the placement of children." 51 O.S. § 155

3. Jury Instructions on Punitive Damages

¶41 In its final allegation of error concerning jury instructions, the School District has alleged the trial court erred by denying the School District's requested instruction on punitive damages. More specifically, the School District argued that, while Brown did not assert a claim for punitive damages in the instant case, the trial court committed reversible error by not explicitly informing the jury that, pursuant to 51 O.S. § 154

¶42 Broad discretion is given to a jury to determine the amount of damages. Fowler v. Lincoln Cnty. Conservation Dist., 2000 OK 9615 P.3d 502Fox v. Crowgey, 2015 OK CIV APP 23346 P.3d 425Clark v. Bearden, 1995 OK 71903 P.2d 309

¶43 Beyond general speculation as to what influenced the jury's ultimate award of damages, the School District has not supported its allegation of "reversible error" with sufficient evidence to demonstrate the jury was misled to believe it could award damages intended to punish the School District. Where a jury's award of damages is within the limits of the evidence, we will not invade the jury's province and substitute our judgment as a fact-finding tribunal." B-Star, Inc. v. Polyone Corp., 2005 OK 8114 P.3d 1082

C. Whether the trial court erred in its award of damages, costs, and fees. 

¶44 The School District has additionally alleged error with regard to the trial court's award of damages and costs, including: (1) the application of the UCATA offset prior to the remitter of damages to the GTCA cap of $125,000.00 pursuant to 51 O.S. § 154 In addition, Brown has also alleged error with regard to the trial court's award of damages in his counter appeal, contending the trial court erred in its denial of Brown's request for attorney's fees under 70 O.S. § 6-149.5 of the SPA. As both the School District and Brown alleged error with regard to the trial court's application of § 6-149.5 of the SPA, we will consider both parties' allegations of error in tandem.

1. Application of UCATA Offset Prior to Remitter of Damages to the GTCA Cap.

¶45 The School District has argued that the trial court erroneously applied the UCATA offset prior to limiting the total amount of damages to the GTCA § 154(A)(2) cap of $125,000.00. More specifically, the School District insisted the correct award of damages to Brown should have been $80,000 rather than $125,000.00, stressing that the trial court should have first remitted the jury's $177,119.16 award of damages to Brown to $125,000.00, followed second by the application of the UCATA offset based upon Brown's $45,000 settlement agreement with Boshers, consequently reaching this $80,000 damages figure. The School District's argument, however, is directly contrary to existing legal authority and we, therefore, find no error in the sequence by which the trial court applied the UCATA offset followed by the remittitur of damages to the GTCA cap of $125,000.00.

¶46 In accordance with 51 O.S. § 154Thomas v. City of Tulsa, 1988 OK 138766 P.2d 339Id. at ¶ 8. In a more recent case interpreting the § 154(A)(2) offset, the Oklahoma Supreme Court reiterated its holding in Thomas, similarly rejecting a tortfeasor's request to use the GTCA cap as the reference point to reduce damages rather than the tortfeasor's portion of total damages. Gowens v. Barstow, 2015 OK 85364 P.3d 644Thomas, there would be no reduction in damages from the cap and the damages would therefore be equal to $125,000.00.").

¶47 We, therefore, find the trial court properly applied the UCATA offset prior to remitting the School District's total damages to the § 154(A)(2) GTCA cap of $125,000.00. As we find no error in the trial court's sequence of applying the UCATA offset followed by the GTCA cap, the trial court's award of damages in the amount of $125,000.00 is affirmed.

2. Applicability of the School Protection Act & Award of Attorney's Fees and Costs in Excess of the GTCA Cap on Liability

¶48 In addition to the trial court's award of damages to Brown in the amount of $125,000.00, the trial court also awarded Brown $16,061.74 in costs under the School Protection Act, while also denying Brown's request for attorney's fees via the SPA. Both the School District and Brown have alleged error with regard to the trial court's interpretation and application of the SPA, found in 70 O.S. § 6-149.5(A). The School District alleged the trial court erred both by applying the SPA in contravention to the statute's intended purpose, as well as awarding fees which exceeded the statutory cap of $125,000.00 in 51 O.S. § 15451 O.S. § 154

¶49 In a GTCA action, Oklahoma case law is clear that a party's total recovery from a state entity cannot exceed that of the statutory cap. Belletini v. State ex rel. Dep't of Transp., 1996 OK CIV APP 30920 P.2d 106751 O.S. § 154Truelock v. City of Del City, 1998 OK 64967 P.2d 1183Huff v. State, 1988 OK 118764 P.2d 183

¶50 Notwithstanding the disputed application of the SPA (which this Opinion makes no interpretation thereof), we find the trial court erroneously awarded expert costs to Brown in excess of the $125,000.00 statutory cap in 51 O.S. § 154

CONCLUSION

¶51 Based upon the foregoing analysis, we find the trial court properly denied both the School District's Directed Verdict and requested jury instructions at issue. We also find that, while the trial court award of damages in the amount of $125,000.00 was correct, the trial court erred in its award of expert costs to Brown in excess of the $125,000.00 cap on liability was improper. For that reason, we affirm the trial court's judgment in part as to the $125,000.00 award of damages to Brown, while we vacate the judgment in part as to the $16,061.74 award of expert costs to Brown.

SWINTON, P.J., and BELL, V.C.J., concur.

FOOTNOTES

Chamberlin v. Chamberlin, 1986 OK 30720 P.2d 721Myers v. Missouri Pacific R. Co., 2002 OK 6052 P.3d 1014

Additionally, the School District noted in its Br.-in-Chief that it was no longer pursuing three of the fifteen (15) issues it asserted in its Petition in Error., which were related to: (1) jury instructions related to the measure of Brown's damages; (2) jury instructions related to waiver of Brown's arguments which were not submitted in his initial notice of tort claim; and (3) whether the jury's findings related to emotional distress/mental anguish were supported by competent evidence.

12 O.S. § 578

For negligence to be a direct cause it is necessary that some injury to a person or to the property of a person in Plaintiff's situation must have been a reasonably foreseeable result of negligence." Instruction No. 9.6, O.U.J.I. 3d (OSCN) (emphasis added).

51 O.S. § 154